**Martin P. MARSTON**

v.

**R. M. OLIVER, Superintendent of the Virginia State Farm.**

No. 272-69-R.

United States District Court, E. D. Virginia, Richmond Division.

March 10, 1971.

James L. Sanderlin, Richmond, Va., for petitioner.

Overton P. Pollard, Asst. Atty. Gen., of Virginia, Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

Martin Marston petitions this Court for a writ of habeas corpus relieving him from the effects of a judgment of the Circuit Court of Chesterfield County.

When he filed the petition, Marston was confined in the Virginia State Farm by the respondent. Pertinent facts about his criminal conviction have been stipulated:

> On February 24, 1969, Martin P. Marston, on a plea of guilty, was found guilty of driving on a suspended operator's license by the County Court of Chesterfield County, Virginia, and sentenced to one year imprisonment and $1,000 fine. From this sentence, Marston appealed and requested assistance of counsel on the appeal to the Circuit Court of Chesterfield County, Virginia. This request was denied. On May 27, 1969, on a plea of not guilty, Marston was found guilty by a jury and sentenced to 12 months in jail and a $100 fine.

During the period of his imprisonment Marston filed a petition for habeas corpus challenging the denial of counsel. Thereafter on October 23, 1969, Marston was released from state custody. Subsequently, on January 6, 1970, Marston was barred from operating a vehicle on the highways of the State of Virginia for a period of ten years, having come under the provisions of Virginia Code § 46.1–387.1 et seq., as a result of the conviction in the Circuit Court of Chesterfield County, Virginia, on May 27, 1969.

In addition to the factual stipulation, a plenary hearing revealed his indigency at the time of his request to the state court for assistance of counsel.

The question presented is whether the petitioner's sentence to imprisonment for twelve months cannot stand by reason of the refusal to afford him appointed counsel.

### Mootness

■ The case is not moot. Marston is now released from detention, but his conviction has given rise to the very real civil disability of ten years' withdrawal of his driving permit. In the record is the prosecutor's information which initiated the proceedings which resulted in this disability. One of the convictions listed in support of the claim that the petitioner is an "habitual offender" is that of May 27, 1969, attacked herein. Collateral prejudicial consequences, therefore, actually flow from the judgment here contested. Consequently the petitioner's release during the pendency of these proceedings does not moot his case. Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Wood v. Ross, 434 F.2d 297 (4th Cir. 1970); Hewett v. State of North Carolina, 415 F.2d 1316, 1320–1322 (4th Cir. 1969).

### Exhaustion of state remedies

■ Marston did not take any direct appeal, nor have any collateral proceedings been initiated in state courts. For two reasons, however, he is not obliged to seek relief in such forums.

First, the state habeas corpus procedure is not currently available to him. The Virginia Supreme Court of Appeals recently ruled that a prisoner whose sentences expired before a decision could be reached on his habeas corpus petition no longer presented the court with a litigable case:

> Our habeas corpus statutes are designed to provide relief in the form of the "discharge" (Code § 8–603) from the "person in whose custody" (Code § 8–598) a petitioner is "detained without lawful authority" (Code § 8–596).
>
> \*　\*　\*　\*　\*　\*

The petitioner is no longer detained and there is no custody from which to discharge him. To pass upon the merits of his claims would be to render an advisory opinion—a function our habeas corpus statutes neither provide for nor permit. This court, therefore, is without jurisdiction further to entertain the case, and the appeal will be dismissed. Blair v. Peyton, 210 Va. 416, 171 S.E.2d 690, 691 (1970).

There is no indication that the petitioner has deliberately bypassed state procedures by his failure to file a state habeas case while he was confined. Assuming that some prisoner might ever be so resolute in his efforts to avoid state procedures as to file only a federal petition and then await the expiration of his term to press for a ruling, this has not been Marston's strategy. That no intentional forfeiture of known avenues of relief has been made is plain if one considers the second reason for which exhaustion is not now necessary.

Whether or not Virginia courts might now afford Marston a forum to litigate his constitutional claims, recent actions of the state's highest court make it manifest that the prevailing constitutional doctrine in the state system is not in accord with his claims. Resort to state courts would be futile. In such circumstances it is not required. Ralph v. Warden, 438 F.2d 786 n. 1 (4th Cir. 1970); Rowe v. Peyton, 383 F.2d 709 (4th Cir. 1967) affirmed, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 420 (1968); Patton v. North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968); Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964).

Recently the Virginia Supreme Court of Appeals denied two original petitions for habeas corpus by misdemeanor convicts who went to trial without counsel.

In Hackette v. Royster, R 9863, mem. decis. (Va.Sup.Ct.App., June 19, 1969), a habeas petitioner had been tried for two violations of Va.Code § 6.1–115 (1966 Repl.Vol.), the offense of passing bad checks, which carries a maximum sentence of twelve months, Va.Code §§ 18.1–101, 18.1–9 (1960 Repl.Vol.). The state supreme court appointed counsel to brief the issues, which principally involved denial of the right to appeal and refusal to appoint counsel. It is clear, therefore, that the original habeas petition was considered on its merits, as the Supreme Court of Appeals does on occasion. Va.Code § 17–97 (1960 Repl. Vol.); Burgess v. Cunningham, 205 Va. 623, 139 S.E.2d 110 (1964); see Taylor v. Cox, No. 14, 108, mem. decis. (4th Cir., Apr. 22, 1970); McLaughlin v. Royster, Civil Action No. 5667–R, mem. decis. (E.D.Va. Jan. 13, 1971).

Hackette's request for counsel's aid allegedly had been denied in the court not of record where he was tried. He pleaded guilty and allegedly sought to appeal. The guilty plea would not, under Virginia law, have precluded his contesting all issues in the de novo trial in a court of record afforded to appellants. Va.Code § 16.1–132 (1960 Repl.Vol.). His attorney specifically argued the applicability of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) to Hackette's case.

A procedural question arose as to whether the Supreme Court of Appeals should or could remand to a lower court for the determination of unrecorded matters of fact raised in the pleadings. See Va.Code §§ 8–596, 8–598 (1957 Repl.Vol., Supp.1970). The respondent had not denied, however, that the petitioner was not represented by counsel nor was he offered court-appointed counsel. Under Virginia pleading principles, allegations not denied are accepted as true. Morris v. Smyth, 202 Va. 832, 120 S.E.2d 465 (1961). Whether or not conclusive court records were available to settle the factual issues of offer or waiver of counsel's assistance, and whether or not a hearing to determine those questions could be conducted, it would appear that the state of the pleadings in *Hackette* left no facts material to the issue in dispute, and that the legal question of the duty to provide coun-

sel in cases such as Hackette's alone remained. The dismissal of the petition consequently constituted a ruling on the merits adverse to the petitioner. Rowe v. Peyton, *supra,* offers a close analogy:

> [Rowe's] petition was rejected by the Supreme Court of Appeals of Virginia without an opinion, but in light of the factual allegations of the petition, that rejection must have been upon the procedural ground that Rowe was not presently serving the sentence he seeks to attack. Thacker should not be required to travel the same road through the state courts to present a question which the Virginia Supreme Court of Appeals has so recently decided, when there is no indication that it is now prepared to depart from the former course of its decisions. Rowe v. Peyton, *supra,* 383 F.2d at 711 (footnotes omitted).

Carter v. Gathright, R 9840, mem. decis. (Va.Sup.Ct.App., June 17, 1969), is a similar case. Carter alleged that he asked the sheriff for an attorney before his county court trial. His request was denied. Responsive pleadings made no denial but stated ambiguously that "petitioner being tried for misdemeanors was not entitled as a matter of right * * * to counsel of his own choosing." The writ was denied in this case as well. Carter had faced two misdemeanor charges, each of which carried a maximum penalty of a year's confinement.

In view of these recent rulings of the state's highest court resolving the very issue which Marston raises here adversely to his contentions, it would be senseless, even if a state forum would consider his claim on the merits, to require him to seek relief there.

### Right to counsel

Marston was, at the time of his trial in the court not of record and at the time of his de novo retrial, financially unable to retain counsel. He had $35.00 available for his use in the first instance and no money at all the second time. The circuit court made no inquiry as to his financial status, despite that he did request counsel's aid.

■ In view of Marston's request for counsel, it is obvious that he did not waive whatever rights he had. Nor did the petitioners who sought relief from the state supreme court in original habeas cases, for it has long been the law that a failure to request a lawyer's aid does not constitute an effective waiver:

> The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution. Johnson v. Zerbst, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The United States Supreme Court has not yet held that a defendant charged with a misdemeanor is entitled to counsel at state expense when he cannot afford his own. Opportunities for such a decision have arisen, but the Court has not found it appropriate, in those instances, to resolve the issue. De-Joseph v. Connecticut, 385 U.S. 982, 87 S.Ct. 526, 17 L.Ed.2d 443 (1966), cert. denied; Winters v. Beck, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137 (1966), cert. denied; but see Patterson v. Warden, Maryland Penitentiary, 372 U.S. 776, 83 S.Ct. 1103, 10 L.Ed.2d 137 (1963). Of course no significance as to the merits of a particular contention can be attributed to a denial of certiorari.

Despite the lack of a Supreme Court holding in point, the opinion in Gideon v. Wainwright, *supra,* which involved a felony conviction, is not qualified by language restricting it to felony prosecutions, or to cases wherein the defendant faces or receives a particular penalty:

> Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, *any person haled into court,* who is too poor to hire a lawyer, cannot be assured a fair trial un-

less counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try *defendants accused of crime.* Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants *charged with crime,* few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers *in criminal courts* are necessities, not luxuries. The right of one *charged with crime* to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the *poor man charged with crime* has to face his accusers without a lawyer to assist him. Gideon v. Wainwright, *supra,* 372 U.S. 344, 83 S.Ct. 796 (emphasis supplied).

*Gideon,* whether it establishes a constitutional right to counsel in all criminal cases or a right which exists only when an indigent defendant faces something over a certain minimum penalty, requires that defendants in Marston's position be afforded counsel's assistance.

In this instance the criminal charge was not complex. From the prosecutor's point of view it might have been a case almost impossible to lose. The facts of the case might, however, have raised issues concerning the suspended status of Marston's license or his knowledge thereof. Counsel would have been necessary to identify and explore these issues. This Court does not rely, however, on any particular finding of prejudice, any "special circumstances" which imposed upon the state court the duty of appointing counsel for this indigent. For one thing, it is all too easy for the bench and the bar to dismiss certain cases as simple ones; we fail to perceive the judicial process as do laymen with less or different education. "That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious." Johnson v. Zerbst, *supra,* 304 U.S. at 463, 58 S.Ct. at 1022. The material facts of a case may be simple, but the means to establish them may be beyond the lay defendant. Untutored in the law of evidence, he may forfeit a valid defense by neglecting to summon the requisite witnesses or present the proper documentary proof.

Furthermore, approaching the issue with utmost realism, the Court believes that the greatest service which counsel may render in many cases is that of negotiating with his opposite number for a guilty plea to a reduced charge. "In many, or even most, cases, the only defense available is the determination and nerve of the defense attorney," Brown v. Peyton, 435 F.2d 1352 (4th Cir. 1970). A lay defendant cannot be expected to embark on such dealings unaided. Plea bargaining requires open discussion of the strengths and weaknesses of each side's case and a confident awareness of the consequences of alternative strategies. Without a lawyer, a defendant may be unconscious even of the opportunity to commence such discussions, and he certainly will be constrained in his conduct thereof. "Counsel, or effective waiver thereof, is a *sine qua non* of permissible plea bargaining." Grades v. Boles, 398 F.2d 409 (4th Cir. 1968). To deny an indigent a legal representative is effectively to deny him the power to bargain at all.

Moreover, in nearly every context in which courts have concluded that counsel's services are essential to due process, they have abandoned any requirement that prejudice be specifically

shown. This reflects the realistic view that a lawyer's function is to discover legal and factual issues and to use available procedures to further the interests of his client at each stage of the prosecution, and that it is nearly impossible to reconstruct after the fact the likely course of a trial, had counsel played a role. A defendant wrongly denied counsel normally, then, is given the opportunity in a new trial to demonstrate how counsel would have served him, concurrently with a redetermination of his guilt. Prejudice from the prior denial is presumed. Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Gideon v. Wainwright, *supra*; Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); Glasser v. United States, 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Hewett v. State of North Carolina, *supra*, 415 F.2d 1325; compare Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Our court of appeals has held that when a defendant has been denied the aid of a lawyer loyal exclusively to his interests, "the possibility of harm is sufficient to render his conviction invalid." Sawyer v. Brough, 358 F.2d 70, 73 (4th Cir. 1966).

■■■ This Court has concluded that at least when a layman faces possible imprisonment for twelve months, whatever the label of his offense, due process requires that he have the opportunity to defend himself by counsel. The distinction between felonies and misdemeanors is only a matter of designations applied by state law; federal constitutional rights do not hinge on such superficialities. The consequences of a misdemeanor conviction may well be more serious than those flowing from many felony convictions. Imprisonment under conditions similar to those to which felons are subjected may ensue. Any incarceration of over thirty days, more or less, will usually result in loss of employment, with a consequent substantial detriment to the defendant and his family. The essential nature of the right to counsel in other nonfelony cases where such substantial consequences are possible has received recognition. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). No logical justification exists for drawing any distinction between Marston's misdemeanor case and that of an indigent felony defendant.

In other circuits indigent misdemeanor defendants have been held entitled to counsel when arraigned or tried. The Fifth Circuit so ruled as early as 1965 in Harvey v. State of Mississippi, 340 F.2d 263 (5th Cir. 1965), a case involving a 90 day day jail term. A district court in the Second Circuit held in 1966 that one faced with a one year term was tried for an offense carrying a "substantial prison sentence" and therefore was due counsel under *Gideon*, Arbo v. Hegstrom, 261 F.Supp. 397 (D.Conn. 1966). The Eighth Circuit likewise has ruled that at least in some circumstances a misdemeanant must have a lawyer's aid; particularly important to that court in considering whether due process so requires is the possible penalty the defendant faces. Beck v. Winters, 407 F.2d 125 (8th Cir. 1969). See also, Shepherd v. Jordan, 425 F.2d 1174 (5th Cir. 1970); James v. Headley, 410 F.2d 325 (5th Cir. 1969); Goslin v. Thomas, 400 F.2d 594 (5th Cir. 1968); Wilson v. Blabon, 370 F.2d 997 (9th Cir. 1967); McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965); Brinson v. Florida, 273 F. Supp. 840 (S.D.Fla.1967); Rutledge v. Miami, 267 F.Supp. 885 (S.D.Fla.1967). Recently the West Virginia Supreme Court of Appeals ruled that the assistance of counsel was required, under *Gideon*, for an indigent misdemeanor defendant facing a possible jail term of six months. Moats v. Janco, 8 Cr.L. Rptr. 2285 (Jan. 14, 1971) (opinion subsequently withdrawn on rehearing, 180 S.E.2d 74 (1971)).

This Court will not attempt now to fashion a standard determining exceptions, if any, to the duty to appoint counsel in cases involving lesser potential penalties than that which Marston faced. The Supreme Court has been able to fix

guidelines, in terms of possible sentence, establishing the applicability of the sixth amendment right to jury trial. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The right to counsel may, however, be considered essential to due process even in cases where the right to jury trial does not attach. It seems plain, however, that the thrust of *Gideon* leaves only one possible factor of significance in determining whether a right to the services of counsel exists: whether the offense carries "the possibility of a substantial prison sentence." Gideon v. Wainwright, *supra*, 372 U.S. at 351, 83 S.Ct. at 801 (Harlan, J., concurring). "The Court has come to recognize, in other words," Mr. Justice Harlan notes elsewhere, "that the mere existence of a serious criminal charge constituted in itself special circumstances requiring the services of counsel at trial. In truth the Betts v. Brady [316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)] rule is no longer a reality." *Id.* The extent of any minimum potential penalty which might invoke the *Gideon* rule is matter for later decision. At this time it is necessary only to decide that, under the unqualified language of *Gideon* as well as Mr. Justice Harlan's interpretation of that holding, due process required that Marston be granted a lawyer's assistance at critical stages of his case.

The Court is aware of the existence of a divergent ruling in this district, Hackette v. Royster, Misc. No. 359–60–N, mem. decis. (E.D. Va. May 22, 1970), but notes its respectful dissent, for the reasons stated, from the view that particular prejudice must be shown to have flowed from the lack of counsel.

Apropos of the precept expressed in *Hackette, supra*, it appears to this Court that the lack of counsel at the very least tends to deter one from exercising the right of trial by jury. Laymen undoubtedly are, in most instances, at a disadvantage in their ability to deal with the selection of a jury encompassing their right of challenge for cause, etc. The lack of procedural knowledge may in itself give rise to a chilling effect in the exercise of a basic constitutional right. In addition, as a practical matter, judges trained to separate the inadmissible from the admissible of necessity are less lenient in evidentiary rulings when a jury sits than when the fact finding burden falls upon them. This fact, it seems to the Court, assuming the defendant overcomes the initial chilling effect arising from the need to select a jury without, except in rare instances, any knowledgeable conception of the entire procedure, gives rise to the probability of a defendant being prejudiced by his inability to propound questions and to testify in such a way as to conform to the rules concerning the fact finding inquiry.

Because Marston has been released from his jail term, the Court, guided by Hewett v. State of North Carolina, *supra*, 415 F.2d at 1325, shall issue the writ declaring the conviction invalid. The petitioner should have no difficulty, the Court assumes, in hereafter gaining relief from such collateral consequences as have flowed in part from his invalid conviction. Because his sentence is fully served, Marston may not be further incarcerated for the acts for which he was tried and convicted. Because the state has a substantial interest, however, in imposing disabilities on those who may have committed such offenses as Marston was charged with, it would be inappropriate for the Court to bar a retrial, if conducted within a reasonable time. Compare Wood v. Ross, *supra*, 434 F.2d at 300.

An order shall issue consistent with this opinion.