## State of Vermont v. William C. O'Connell

[383 A.2d 624]

No. 309-76

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 7, 1978

*Gregory W. McNaughton,* Washington County State's Attorney, and *Brian J. Grearson,* Deputy State's Attorney, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, *Charles S. Martin,* Appellate Defender, and *Geoffrey Yudien* (On the Brief), Montpelier, for Defendant.

**Daley, J.** The respondent was involuntarily committed pursuant to 13 V.S.A. § 4822 by the District Court of Vermont, Unit No. 5, Washington Circuit on August 12, 1976. On appeal, he contests the validity of that commitment in two respects: first, the committing court made no determination that respondent was dangerous to himself or others; and secondly, the committing court applied the preponderance of evidence standard rather than the reasonable doubt standard. While cognizant of the current vitality of both of these issues, this Court does not reach them because of an intervening procedural infirmity in the record below.

This involuntary commitment arose in a criminal context. On July 16, 1976, the respondent pleaded not guilty and not guilty by reason of insanity to a charge of simple assault on a police officer in violation of 13 V.S.A. §§ 1023 and 1028 and was ordered to appear for psychiatric examination under 13 V.S.A. § 4814. The psychiatrist's opinion submitted to the court on August 5, 1976, stated that although the respondent was insane at the time of the assault he was nevertheless competent to stand trial. However, the report went on to specify that should the court find the respondent to have been insane at the time of the offense he would then require treatment in a hospital setting because of his lack of insight into the nature of his illness. At a subsequent hospitalization hearing pursuant to 13 V.S.A. § 4820 on August 12, 1976, the district court issued an order resulting in respondent's commitment to the Commissioner of Mental Health for an indefinite period, and on October 28, 1976, the criminal charges against the respondent were dismissed.

██ ██ We must first determine whether this Court has jurisdiction to hear respondent's claim. The State argues that respondent's final discharge from the Vermont State Hospital on February 21, 1977, renders his case moot. Under the mootness doctrine, we recognize that respondent's stake in the litigation must continue throughout its entirety, precluding this Court's indulgence in advisory opinions, *In re M. A. C.*, 134 Vt. 522, 523, 365 A.2d 254, 255 (1976). However, we find respondent O'Connell's case to come within two exceptions to the mootness doctrine. First, as respondent pointed out in oral argument, involuntary commitments are usually of such short duration that they are situations aptly termed "capable of repetition, yet evading review." *Roe* v. *Wade*, 410 U.S. 113, 125 (1973); *In re Ballay*, 482 F.2d 648, 651 (D.C. Cir. 1973). Secondly, we find that respondent O'Connell, although now discharged, continues to suffer the collateral consequences of his commitment. The legal disabilities radiating from the label of mentally incompetent are myriad, *In re Ballay, supra*, 482 F.2d at 651-52; *Developments in the Law—Civil Commitment of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1200-01 (1974), and are not dispelled by discharge. We acknowledge that in a previous consideration of an involuntary commitment pursuant to 18 V.S.A. § 7606, the civil parallel to 13 V.S.A. § 4820, this Court in a per curiam opinion found a due process challenge to an involuntary commitment to be moot in light of that respondent's discharge. *In re M. A. C., supra*, 134 Vt. at 523, 365 A.2d at 255. The fact that respondent O'Connell has been hospitalized on one prior occasion does not necessarily vitiate the collateral consequences of the contested commitment. *In re Ballay, supra*, 482 F.2d at 653, citing *Sibron* v. *New York*, 392 U.S. 40, 56-57 (1968). We distinguish the case at bar from *In re M. A. C.* on the particular facts surrounding respondent O'Connell's commitment which generate collateral consequences sufficient to avoid mootness in this instance.

We now consider the procedural infirmity which precludes our consideration of respondent's substantive claims. The psychiatric determination that respondent was insane at the time of the alleged offense pursuant to 13 V.S.A. §§ 4814–4816 triggered an involuntary commitment procedure which is

separate and distinct from the criminal proceedings to that point and which closely parallels the involuntary civil commitment procedure, 18 V.S.A. § 7601 et seq. First, there must be a hearing for the purpose of determining whether hospitalization is necessary. 13 V.S.A. § 4820. Secondly, this procedure must afford the respondent notice of the hearing and an opportunity to present evidence. 13 V.S.A. § 4821. Thirdly, in order to commit, the court must find that such person:

(1) Is mentally ill, and

(2) Because of his illness

(A) presents a substantial risk of injury to himself or others if allowed to remain at liberty; or

(B) lacks sufficient capacity or insight to make a responsible decision concerning his mental condition and is in need of custody, care or treatment;

13 V.S.A. § 4822.

Against these statutory requirements we must measure the findings of the committing court which are paraphrased as follows:

(1) The psychiatrist reported that respondent suffered from a mental ailment at the time of the offense and was insane.

(2) It was the psychiatrist's opinion that respondent lacked sufficient capacity or insight to make responsible decisions concerning his mental condition and was in need of custody, care or treatment.

(3) It was furthermore the psychiatrist's opinion that the respondent was indifferent to his need for medication and it was doubtful whether respondent would cooperate in taking his medication.

These findings are inadequate under *Krupp* v. *Krupp*, 126 Vt. 511, 513, 236 A.2d 653, 655 (1967). The trial court in the proper performance of its judicial function and exercise of independent judgment must do more than repeat the expert testimony before it. Whether this inadequacy without more would be sufficient to vacate the commitment order need not be decided because of a more fundamental defect in the court's findings. 13 V.S.A. § 4822 requires the court to make a threshold finding whether mental illness pres-

ently exists before considering whether the person also presents a substantial risk of injury or lacks sufficient capacity to make responsible decisions concerning his mental condition.

The trial court failed to make a finding of present mental illness in its commitment order, resulting in a defective commitment procedure. Not only did the trial court make no factual determination of present mental illness, it appeared to rely instead on a determination of insanity at the time of the offense in committing the respondent. An involuntary commitment in disregard of respondent's rights cannot stand.

*The order committing the appellant to the care and custody of the Department of Mental Health issued by the District Court of Vermont, Unit No. 5, Washington Circuit, on August 12, 1976, is hereby vacated.*