817 A.2d 53 (2002)
STATE of Vermont
v.
J.S.
No. 02-126.
Supreme Court of Vermont.
December 16, 2002.
*54 Present: AMESTOY, C.J., DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.

ENTRY ORDER
¶ 1. Appellant appeals from an order of the district court involuntarily hospitalizing him for ninety days pursuant to 13 V.S.A. § 4822 after appellant was found not competent to stand trial. We affirm the district court's order.
¶ 2. Appellant was charged with negligent operation of a vehicle and attempting to elude a police officer in violation of 23 V.S.A. § 1091(a) and § 1133 after allegedly driving his van in an erratic and dangerous fashion through downtown Middlebury and then failing to stop after a police officer displayed his flashing blue signal lamp and sounded his siren. When arrested, appellant claimed that he was driving to the police station to alert police of "phosphorous poisoning" at Middlebury High School. After a competency hearing held pursuant to 13 V.S.A. § 4817, the court found appellant incompetent to stand trial. There followed a commitment hearing pursuant to 13 V.S.A. § 4820, where the court *55 found appellant suffered from a mental disease, specifically delusional disorder, paranoid type, and that appellant's delusions led to a loss of judgment and, consequently, his dangerous driving. The court determined that appellant was a person in need of treatment as defined by 18 V.S.A. § 7101(17) and ordered him committed to the state hospital. This appeal followed.
¶ 3. Appellant asserts three claims on appeal: (1) that the district court's conclusion that his driving violations were the result of his mental illness was not supported by the evidence; (2) that the court improperly determined that appellant was a person in need of treatment because there was insufficient proof of present dangerousness as required by Vermont's involuntary commitment statutes contained within chapter 171 of Title 18 and incorporated into the criminal commitment proceedings through 13 V.S.A. § 4822; and (3) that the court's findings were deficient as a matter of law for failing to consider the availability of an appropriate alternative to hospitalization and the least restrictive conditions consistent with adequate treatment as required by 18 V.S.A. § 7617(c) and (e). We reject these claims.
¶ 4. To involuntarily commit a criminal defendant following a determination that the defendant was incompetent to stand trial pursuant to 13 V.S.A. § 4817, the trial court must first hold a hearing to determine whether hospitalization is necessary. 13 V.S.A. § 4820; State v. O'Connell, 136 Vt. 43, 46, 383 A.2d 624, 626 (1978). The defendant must have notice of this hearing and an opportunity to present evidence. 13 V.S.A. § 4821. Moreover, the court must find that: (1) defendant is mentally ill; and (2) because of that mental illness, the defendant presents a substantial risk of injury to himself or others if allowed to remain at liberty, or lacks sufficient capacity or insight to make a responsible decision concerning the conduct of his affairs and social relations. 13 V.S.A. § 4822. We will uphold the trial court's findings of fact as long as there is substantial evidence to support those findings. In re N.H., 168 Vt. 508, 512, 724 A.2d 467, 470 (1998) (evaluating continued involuntary civil commitment). We view the evidence in the light most favorable to the State and will affirm the commitment order if the trial court could have reasonably concluded that the required factual predicate was highly probable. Id. at 512-13, 724 A.2d at 470.
¶ 5. As a preliminary matter, we address the State's argument that appellant's claims on appeal are moot due to a subsequent commitment order issued after the expiration of the court's original ninety day commitment order. Following appellant's initial hospitalization, the Commissioner of Developmental and Mental Health Services filed an application in May 2002 for continued treatment of appellant pursuant to 18 V.S.A. § 7620. The family court granted the application and issued a one year order of hospitalization. Thus, the State argues, appellant's third claim on appeal is moot.
¶ 6. A case or a claim becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 100 (1997). An exception to the mootness doctrine exists when negative collateral consequences are likely to result from the action being reviewed. Id.; State v. Condrick, 144 Vt. 362, 363, 477 A.2d 632, 633 (1984). In mental health commitment cases, negative collateral consequences can apply because the "legal disabilities radiating from the label of mentally incompetent are myriad." O'Connell, 136 Vt. at 45, 383 A.2d at 625. We find that despite appellant's continued hospitalization under an order for *56 continued treatment, the negative collateral consequences of being initially adjudicated mentally ill and then involuntarily hospitalized may continue to plague appellant with both legal disabilities and social stigmatization. See Condrick, 144 Vt. at 364, 477 A.2d at 633. Therefore, we decline to dismiss the appeal as moot and consider appellant's claims on their merits.
¶ 7. Appellant's first claim on appeal is that the record evidence does not support the district court's conclusion that appellant's erratic driving through down-town Middlebury was a result of his mental illness. Appellant is incorrect. At the hearing on the State's petition for hospitalization, appellant's treating psychiatrist-a staff psychiatrist at the Vermont State Hospital-testified that appellant suffers from a mental illness; that his working diagnosis is one of delusional disorder, paranoid type; that the mental illness dangerously impairs appellant's judgment; and that appellant has problems maintaining self-control. Based on this testimony, the district court found that appellant suffers from a mental disease, namely delusional disorder, paranoid type, and "that he has persistent delusions regarding phosphorous poisoning in his own, immediate surroundings and occasionally those of other places."
¶ 8. In determining that appellant's reckless and erratic driving was a result of mental illness, the court relied in part on appellant's statements to the arresting officer. The officer testified that after appellant was eventually stopped and taken to the police station, appellant insisted on making a statement concerning the impetus for his erratic driving. According to the officer's testimony, appellant stated that:
[h]e could sense phosphorous in the air. He thought that there was too high a level of phosphorous in the air. He had gone to the school to vote. The complexion of the students in the school were bright red, and I think [J.S.] said that he can sense phosphorous being present because of a tingling sensation in his mouth. He also said that phosphorous can eat away the calcium in your mouth, and he was on his way to the police station to tell us about phosphorous as a matter of public safety.
¶ 9. When asked if there was a connection between appellant's erratic driving and his mental illness, appellant's treating psychiatrist testified that, were the driving episode to have happened on the day she testified, given her knowledge of appellant's concern about phosphorous poisoning, "it would be likely that [his mental illness] had some bearing on his driving." When asked to consider appellant's complaints about phosphorous poisoning made soon after his erratic driving, the psychiatrist stated, "I think that again would make it more likely that his actions were driven by his concern for poisoning." Based on the totality of this testimony, we find that there was substantial evidence to support the district court's conclusion that appellant's erratic driving was the result of his mental illness. See N.H., 168 Vt. at 512, 724 A.2d at 470. To the extent that the district court was required to infer any part of its factual conclusion, we presume that the court properly inferred the connection between appellant's mental illness and his erratic driving from its sound factual findings. See State v. Danaher, ___ Vt. ___, ___, 819 A.2d 691, 694 (2002); Plant v. Ahlberg, 104 Vt. 16, 19, 156 A. 535, 536 (1931).
¶ 10. Appellant also claims that the district court improperly determined that he was a "person in need of treatment" because there was insufficient evidence to prove appellant was presently dangerous as is required by 13 V.S.A. *57 § 4822. The criminal commitment procedure followed by the district court in this case, contained in 13 V.S.A. §§ 4814-4822, is distinct from the involuntary civil commitment procedure established by 18 V.S.A. §§ 7611-7623. See also Condrick, 144 Vt. at 364, 477 A.2d at 634. However, the Title 13 commitment procedure adopts and incorporates the Title 18 definition of a "person in need of treatment." See 13 V.S.A. § 4822. 18 V.S.A. § 7101(17) defines a "person in need of treatment" as:
a person who is suffering from mental illness and, as a result of that mental illness, his capacity to exercise self-control, judgment or discretion in the conduct of his affairs and social relations is so lessened that he poses a danger of harm to himself or others;
(A) A danger of harm to others may be shown by establishing that:
(i) he has inflicted or attempted to inflict bodily harm on another; or
(ii) by his threats or actions he has placed others in reasonable fear of physical harm to themselves; or
(iii) by his actions or inactions he has presented a danger to persons in his care.
Id. § 7107(17).
¶ 11. Appellant correctly contends that § 7107(17) requires proof of a "present danger of harm to himself or others as evidenced by threats or behavior" to satisfy the statutory definition of person in need of treatment required for involuntary criminal commitments. To establish proof of present danger, the court must make factual findings as to whether appellant posed "a danger of harm to himself or others." Condrick, 144 Vt. at 366, 477 A.2d at 634-35 (internal quotations omitted).
¶ 12. In assessing appellant's present dangerousness, the district court considered the testimony of the police officer who attempted to stop appellant's van. The officer testified that, notwithstanding the fact that he had turned on his blue lights and, after appellant failed to stop, turned on his siren, appellant drove at an excessive rate of speed and in an erratic and dangerous fashion through downtown Middlebury. Specifically, the officer described appellant pulling around cars stopped at a yield or traffic sign and into the oncoming traffic lane to make a left hand turn. Appellant completed the turn, but nearly collided with another car traveling through the intersection. Appellant then sped down Main Street and swerved once again into the oncoming lane, passing a car stopped to make a left turn on that car's left side. During this episode, downtown Middlebury was crowded with both pedestrians and cars.
¶ 13. Additionally, appellant's treating psychiatrist testified that appellant's mental illness directly affects his judgment and interferes with his ability to maintain self-control. While she had not personally observed any aggressive behavior by appellant directed toward state hospital staff, the psychiatrist did note that appellant was placed under "one-on-one" supervision, meaning that a staff member is with him at all times "to avert, avoid, deflect, any aggressive or self-abusive action." Moreover, the psychiatrist testified that, in her opinion, appellant posed a danger to others because appellant believes that people are trying to harm him and he might act on those beliefs. According to her testimony, "[o]ften people who are delusional or psychotic are often most dangerous when they feel as though they are protecting themselves or protecting someone else." She also noted that appellant does not believe he is ill or needs treatment, and that at the time of the hearing *58 appellant had refused antipsychotic medications.
¶ 14. Based on the evidence presented, the district court concluded that appellant posed a risk of harm to others. We find that the evidence substantially supports this conclusion. The court was correct in concluding that "causing a danger of harm to others as a motorist, as has occurred, as a result of mental illness, properly brings [appellant] within the statutory definition of a person in need of treatment." See, e.g., State v. Robinson, 146 Vt. 486, 489, 505 A.2d 674, 676 (1986) (finding of present danger required evidence that defendant's actions placed others in reasonable fear of physical harm).
¶ 15. Finally, appellant argues that the court failed to comply with the directives of 18 V.S.A. § 7617(c), which requires the court to determine "whether there exists an available program of treatment for the person which is an appropriate alternative to hospitalization" and forbids an order of hospitalization without a thorough consideration of available alternatives. Id. § 7617(c). As we noted in State v. Koch, 169 Vt. 109, 730 A.2d 577 (1999), the Title 13 commitment procedure closely parallels, but is not identical to, the involuntary civil commitment procedure contained in Title 18. Id. (citing Condrick, 144 Vt. at 364, 477 A.2d at 634); see also O'Connell, 136 Vt. at 45 383 A.2d at 626. Therefore, while the district court made no such inquiry or findings into the availability of treatment alternatives, there was no requirement that the court do so. Condrick, 144 Vt. at 366, 477 A.2d at 635. In Condrick, this Court rejected a similar claim concerning an involuntary commitment following a finding that a criminal defendant was not competent to stand trial. Id. at 362-63, 477 A.2d at 633. The defendant challenged the commitment order because the trial court failed to determine whether there were less restrictive alternatives to hospitalization. Id. at 366, 477 A.2d at 635. We noted, that "this finding is not required in the commitment procedures at hand but is a requirement, rather, of the civil commitment procedures under Title 18." Id. Accordingly, appellant's third argument on appeal fails.
Affirmed.