2004 VT 74

## George Wild, Jr. v. David Brooks, et al.

[862 A.2d 225]

No. 03-077

Present: Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed August 13, 2004
Motion for Reargument Denied September 7, 2004

*David L. Grayck* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Plaintiff-Appellant.

*Stephen J. Craddock*, Berlin, for Defendants-Appellees.

¶ 1. **Johnson, J.** Plaintiff George Wild initiated this action to permanently enjoin the operation of a commercial shooting range that borders his property. The superior court dismissed Wild's suit after trial, concluding that, at the time of the trial, the terms of the range's Act 250 permit prohibited operations for a period of up to ten years, therefore an injunction could not issue because there was no activity to enjoin and would not likely be any in the foreseeable future. Alternatively, it ruled that 10 V.S.A. § 5227(b) immunized defendants from suits seeking injunctions related to nuisance noise. On appeal, Wild claims that (1) recent revisions to the range's Act 250 permit, which allowed the range to reopen as of this spring, rendered the superior court's opinion advisory; and (2) the grant of statutory immunity under 10 V.S.A. § 5227, if valid, effects an unconstitutional taking by depriving Wild of a remedy for the claimed nuisance. We affirm the trial court's decision in so far as it was based on the equitable principles governing injunctions and justiciability in nuisance suits, and therefore do not reach Wild's statutory and constitutional arguments.

¶ 2. The Bull's Eye Sporting Center abuts the land where Wild lives and works. The Bull's Eye is a commercial shooting range permitted under Act 250, Vermont's land use law. The range is approximately one half mile from Wild's home. During its previous seasons of operation which ran from April 15 to November 15, Wild could hear shooting from the range at various points on his property including his home.

¶ 3. For several years, Wild and his neighbors objected to the shooting range and have appealed Bull's Eye's Act 250 land use permits before the District Environmental Commission (DEC) and Environmental Board. The neighbors' efforts succeeded when, on June 23, 2000, the Environmental Board found that Bull's Eye's operators, the Brookses, violated their permit by logging trees that formed part of the vegetative sound buffer between the range and Wild's property. The Environmental Board revoked Bull's Eye's permit, but stated that the Brookses should be given an opportunity to cure the violation. The decision allowed the range to operate on an interim basis until the

DEC issued a new permit that contained conditions addressing the Brookses' violation and effectuating a proposed cure.

¶ 4. On May 29, 2001, Wild and some of his neighbors filed a complaint in Orange County Superior Court alleging, among other things, that the noise from the shooting range created a private nuisance.[1] Plaintiffs sought to permanently enjoin the range's operation.

¶ 5. Meanwhile, the Brookses applied to the DEC for an amended permit. Wild opposed the application before the DEC. On July 5, 2001, the DEC issued an amended permit. Condition 6 of the permit stated that "[t]he 'no shooting zone' for firearms at this range shall include the entire tract until such time as either sufficient tree growth has occurred to restore basal areas in existence prior to the logging performed in 1996-1998 *or* a ten year period has elapsed." This condition effectively halted all firearm shooting at the range for an indefinite period of time not to exceed ten years. In August 2001, the Brookses appealed the DEC's decision, and Wild cross-appealed.

¶ 6. While the appeal to the Environmental Board was pending, the superior court held a trial in Wild's nuisance suit on July 17, 2002. At the close of Wild's case, defendants moved for a judgment as a matter of law. The court granted defendants' motion and dismissed Wild's case, ruling that the extraordinary remedy of injunction was inappropriate because, under general equitable principles, Wild's right to relief was not clear. By stipulation of the parties, the court had taken judicial notice of the ongoing Act 250 proceedings that affected range operations. In the court's view, the fact that the Act 250 process had already suspended range operations for an indefinite period that could last as long as ten years precluded the need for an injunction. The court also ruled that Wild's nuisance suit was barred by 10 V.S.A. § 5227(b). The statute, which was amended in June 2001 after Wild filed his complaint in the trial court, provides that:

> The owner or operator of a sport shooting range . . . who is in substantial compliance with any noise use condition of any issued municipal or state land use permit otherwise required by law shall not be subject to any civil liability for damages or any injunctive relief resulting from noise or noise pollution, notwithstanding any provision of law to the contrary.

---

[1] The neighbors did not join in this appeal.

10 V.S.A. § 5227(b). The court also dismissed Wild's claim for money damages because it found that the evidence did not support Wild's damages claim.

¶ 7. Pursuant to V.R.C.P. 52(a), plaintiffs filed a request for findings of fact, and on August 5, 2002, Wild filed a motion to reconsider the ruling on damages, or in the alternative, to reopen the evidence. In its findings of fact and conclusions of law, filed on January 22, 2003, the court noted the undisputed fact that the range was not in operation at that time and that the range's land use permit prohibited commercial shooting for "a period of ten years or such time as is necessary for sufficient tree growth to occur 'to restore order basal areas in existence prior to the logging performed in 1996-1998.'" Based on this finding, the court concluded that, although both Wild and the Brookses had appealed the permit decision, injunctive relief was not available for the same reasons it cited in its earlier ruling: the Act 250 ten-year ban and statutory immunity. Despite its reliance on the statute as an independent ground for dismissal, the court declined to address Wild's argument that, by denying Wild access to injunctive relief and monetary damages, the statute effected an unconstitutional taking. The court reasoned that "Plaintiffs' claims fail for reasons separate and apart from the immunity provided under the statute," because, at the time, the Act 250 process had abated the nuisance for the foreseeable future.

¶ 8. Wild appealed the court's ruling. While the case was on appeal, subsequent developments in the Act 250 appeals process resulted in a ruling that allowed defendants to reopen the shooting range by April 2004,[2] subject to revised hours of operation and several other noise mitigation conditions. Wild argues that this change in the predecision status quo subsequently rendered the trial court's opinion advisory. Wild also renews his claim that, in the context of this case, 10 V.S.A. § 5227(b) effected an unconstitutional taking of his property.

¶ 9. We affirm the trial court's decision to the extent that it relied on equitable principles militating against the issuance of an injunction to prohibit alleged nuisance activity that was already halted indefinitely by a collateral legal process. In essence, the trial court determined that the case was mooted by the involuntary and indefinite cessation of range activities. The fact that the range was permitted to reopen after the court had entered final judgment does not invalidate a decision

---

[2] The Court is unaware of the current status of the range. The parties agreed at oral argument that the range could, and likely would, be reopened by April 2004.

that was correct when it was entered. To the contrary, the court avoided issuing an advisory opinion because the trial court could not have predicted the results of the Act 250 process and the noise-related changes in range operations that it would effect. Under such circumstances, a determination in the fact-sensitive nuisance context would have been inappropriate. Our holding with respect to mootness and justiciability precludes our application of the statute. We reserve judgment on its constitutionality until such time as the issue is squarely presented in the context of a live controversy.

¶ 10. An injunction is an extraordinary remedy that will not be routinely granted unless the right to relief is clear. *Comm. to Save Bishop's House v. Med. Ctr. Hosp. of Vt.*, 136 Vt. 213, 218, 388 A.2d 827, 830 (1978). Injunctions are designed to deter injurious conduct; thus relief will not be granted if the conduct has been discontinued, i.e., if the case is moot. 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2942, at 47-48 (2d ed. 1995) (citing cases). Because the court's inquiry in the nuisance context is heavily fact-bound, courts must be cautious about issuing injunctions where changes in the circumstances giving rise to the alleged nuisance are likely to occur. See *Trickett v. Ochs*, 2003 VT 91, ¶ 37, 176 Vt. 89, 838 A.2d 66 ("In determining whether a land use of a lawful business constitutes a nuisance, courts must consider both the extent of the interference and the reasonableness of the challenged activities in light of the particular circumstances of the case.") (citation omitted); *Winget v. Winn-Dixie Stores, Inc.*, 130 S.E.2d 363, 367 (S.C. 1963) ("Whether a particular use of property is reasonable and whether such use constitutes a nuisance depends largely upon the facts and no definite rule can be laid down for the determination of the question.").

¶ 11. The court properly exercised equitable restraint by refusing to enjoin the alleged nuisance at a time when the source of the nuisance had been abated by the Act 250 process for the foreseeable future. Though the range was operating as an alleged nuisance when Wild filed his complaint in May 2001, under the terms of Bull's Eye's Act 250 amended permit issued in July 2001, commercial shooting was prohibited on the Brookses' entire tract. Accordingly, no shooting was occurring in July 2002 when the court heard Wild's case and decided the Brookses' motion. The permit still prohibited shooting for an indefinite period of up to ten years at the time the trial court issued its conclusions of law and findings of fact in January 2003. From the trial

court's perspective, Wild had an adequate remedy at law that had mooted his equitable cause of action. We agree with its conclusion because Wild's case no longer presented a live controversy at the time of trial and decision; he had no clear need for the relief he sought. See *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) (case becomes moot when issues presented are no longer live); see also *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 239, 515 A.2d 371, 373 (1986) (parties must have a stake in the litigation at all phases, not merely at time when complaint is filed).

¶ 12. After the trial court rendered its decision, the facts changed significantly. As it turned out, the Environmental Board rejected the tract-wide ten year ban, but did impose additional conditions aimed at mitigating the noise. Approximately eleven months after the trial court's decision, Bull's Eye had a new permit authorizing shooting as early as April 2004. These subsequent developments did not undermine the trial court's decision to dismiss the case as moot. If we were to assume, without deciding, that the shooting range's previous operated operation created a nuisance, that would not necessarily lead to the conclusion that the operation would still create a nuisance after it reopened under the new conditions required to cure the noise-related permit violation that initially precipitated the shut-down. See *Schlotfelt v. Vinton Farmers' Supply Co.*, 109 N.W.2d 695, 698 (Iowa 1961) (fair test as to whether operation of lawful business constitutes nuisance is reasonableness of conducting business in manner, at place, *and under circumstances in question*). The new noise-related conditions imposed by the Environmental Board in April 2003 include: reduced hours of operation, no-shooting days, the elimination of two shooting stations, the requirement that range shooters use different type of ammunition that should decrease the noise, and the imposition of a perpetual no-shooting buffer zone abutting Wild's property. These are all important factors that *could* affect the nuisance determination.

¶ 13. The imposition of these changed conditions, after the trial court had rendered its decision, prevents Wild's case from falling within the mootness exception for cases that are capable of repetition but evade review. See *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 101 (1997). We will apply this exception "only if: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* at 67-68, 702 A.2d at 101 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Wild did not present evidence that the final resolution of

the Act 250 process would have timely restored Bull's Eye's operations under the same or substantially similar conditions that Wild's suit complained against.[3] Moreover, the new noise mitigation conditions Bull's Eye must satisfy prior to resuming operations are sufficiently different from those prevailing prior to the shutdown such that we will not consider the resumed operations to be the "same action" for purposes of this exception.

¶ 14. At the time the trial court ruled, the imposition of these conditions was almost four months away, and the implementation of these conditions was more than a year away — although neither party knew this at the time. Moreover, Wild's evidence at trial pertained to the conditions prevailing at the range prior to the shutdown. For example, Wild relied on acoustical testing of the range noise audible on his property. This testing occurred after the Brookses had logged the vegetative sound buffer, but before the Act 250 process had imposed the conditions designed to mitigate the effects of this noise-amplifying permit violation. The trial court was in no position to judge whether the resumed operation of the range under new conditions would create a nuisance when it had neither evidence of what those new conditions would be, nor evidence of how those new conditions affected sound frequency and levels on Wild's property. The court's opinion would have been advisory if under these circumstances it had applied the nuisance criteria and issued an injunction based on range operations that were no longer extant. See *In re Bennington School, Inc.*, 2004 VT 6, ¶ 19, 176 Vt. 584, 845 A.2d 332 (judicial power, as conferred by Vermont Constitution, is limited to the determination of "actual controversies arising between adverse litigants"); see also *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998) ("The existence of an actual controversy turns on whether the plaintiff is

---

[3] Wild also argues that his case is not moot because negative collateral consequences are likely to result from the action being reviewed. See *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 101 (1997). We have applied this exception in involuntary commitment cases that were technically moot because the person challenging the commitment had been released by the time the appeal was heard. See, e.g., *State v. O'Connell*, 136 Vt. 43, 45, 383 A.2d 624, 625 (1978). We review these cases because an incorrect judgment left unreviewed can result in social stigmatization associated with being labeled mentally incompetent and can create undue legal liabilities long after the individual is released from the state facility. See *id.* at 45, 383 A.2d at 625; *P.S.*, 167 Vt. at 67, 702 A.2d at 101. Against this background, it is difficult to discern how this exception could be applied here, and Wild's brief is of little assistance. Accordingly, we decline to extend this exception to mootness issues arising from nuisance cases.

suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance.") (internal quotations omitted). Contrary to Wild's suggestion, an opinion that was based on the facts as they existed at the time of decision does not become advisory merely because those facts changed after the opinion is issued.

¶ 15. Wild seeks to rebut the mootness conclusion by arguing that he retained a cognizable interest in the outcome of the litigation throughout its entirety because the court knew or should have known that the cessation in range activities was temporary, and that once activities resumed he would still be subjected to the alleged nuisance. Wild relies on *State v. Preseault*, 163 Vt. 38, 42-43, 652 A.2d 1001, 1003-04 (1994). In *Preseault*, the State filed a trespass action against abutters who claimed interest in a railroad right-of-way owned by the State, and who had excavated soil from the right-of-way without the State's permission. The State sought and won a permanent injunction against the abutters' continuing trespass. On appeal, the abutters argued that the trial court's opinion with respect to the trespass injunction was advisory because the trespass issue was moot when decided. Abutters argued that an injunction was not necessary because the trespass occurred only once and there was no indication that abutters had engaged in further conduct. In deciding that the case still presented a live and justiciable controversy, we concluded that abutters "continue[d] to vigorously defend their asserted right to engage in excavation or other similar activities in the future," and thus had a real stake in the litigation. *Id.* at 42, 652 A.2d at 1004. We also rested our affirmance of the injunction on the fact that abutters' refusal to give up their claim to the property created the threat of a continuing trespass sufficient to entitle the State to a permanent injunction. *Id.* at 42-43, 652 A.2d at 1004. By analogy, Wild asserts that defendants' unrelenting pursuit of an Act 250 appeal created a continuing threat that the nuisance would return, and that this threat was of a definite character sufficient to assure the court that, under *Preseault*, injunctive relief was appropriate and necessary. We disagree. The threat that the nuisance would return was too remote at the time of trial to warrant the imposition of a permanent injunction.

¶ 16. Here, the prohibitions in defendants' Act 250 permit presented a formidable barrier to the reopening of the shooting range. Unless and until the Brookses secured a reversal of the DEC's permit condition banning shooting on the entire tract for a period up to ten years, the range could not operate. By contrast nothing other than the

injunction sought would have prevented the abutters in *Preseault* from resuming the threatened trespass at any time. The United States Supreme Court has warned against a party's "efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952). In contrast to *Preseault*, defendants here did not maintain any pretext of abandonment. Instead, they conceded their intention to reopen the range if and when they could secure appropriate revisions to their Act 250 permit. The court knew of their intentions because it had taken judicial notice of the Act 250 proceedings that had occurred to date and of the fact that both parties were appealing to the Environmental Board. But while defendants' intentions may have been clear, the ultimate result of the Act 250 process, and thus the need for an injunction, was not.

¶ 17. As we stated *supra* at ¶ 12, the considerations that inform the nuisance determination here are distinct from those involved in enjoining a continuing trespass such as occurred in *Preseault*. Trespass involves the unprivileged entry on to the land in possession of another. *Harris v. Carbonneau*, 165 Vt. 433, 437, 685 A.2d 296, 299 (1996). By definition, trespass involves conduct that the trespasser has no right to engage in; thus when courts enjoin a continuing trespass no infringement of legal rights occurs. Here, the alleged nuisance arises from the Brookses' lawful operation of a permitted shooting range that is the source of their livelihood. Putting aside the question of statutory immunity, a court may properly enjoin a legally operated business if it finds that its operation creates a substantial and unreasonable interference with another's lawful use and enjoyment of her property, i.e., a nuisance. But as we have explained, this is a multi-factored analysis that should not be conducted when the facts bearing on the analysis are not known. In light of the fact that nuisance cases implicate rights of the defendant as well as those of the plaintiff we will not extend the reasoning contained in *Preseault*, a continuing trespass case, to the mootness determination in the instant nuisance case.

¶ 18. If anything, instead of rendering the court's ruling advisory, the subsequent Act 250 proceedings that restored Bull's Eye to operation gave rise to a new cause of action based on the noise that would be generated by the range as it is required to operate under the terms of its new land use permit. This cause of action had not yet

ripened when the trial court made its final dispositive ruling in the case.

¶ 19. In an attempt to avoid this ripeness problem, Wild suggests that he could file a motion in the trial court under V.R.C.P. 60(b)(2) and petition this Court for remand. See *Kotz v. Kotz*, 134 Vt. 36, 39, 349 A.2d 882, 884-85 (1975) (Court may retain jurisdiction over an appeal, but still remand when a party seeks relief under V.R.C.P. 60(b)). Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding [because of] . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ." Wild suggests that the subsequent Environmental Board decision and Act 250 permit issued in December 2003 qualify as new evidence under the rule. Wild's consideration of a motion on these grounds is, however, a concession that the results of the subsequent Act 250 proceedings significantly change the landscape against which the court's judgment was rendered, thus reinforcing the court's view that a ruling on the nuisance claim was not appropriate at a time when the range was legally barred from operation.

¶ 20. Furthermore, Wild chose to continue to trial one year after the range was temporarily shut down by the Act 250 process instead of waiting until the process played out to determine if the range's operation under the newly imposed conditions created a nuisance, or if the range would be allowed to operate at all. As we have often stated, V.R.C.P. 60(b) does not operate to protect a party from freely made tactical decisions which in retrospect may seem ill advised. *Okemo Mountain, Inc. v. Okemo Trailside Condos., Inc.*, 139 Vt. 433, 436, 431 A.2d 457, 459 (1981).

¶ 21. In affirming the court's resolution, we recognize that the court applied 10 V.S.A. § 5227(b) to Wild's case, even though its own order recognized that the Wild's claims "fail for reasons separate and apart from the immunity provided under the statute." We decline to address those parts of the court's decision that interpret and apply the statute to the instant case as such discussion was extraneous to its decision, and, in light of the foregoing analysis, it is to ours as well. We will reserve judgment on the constitutional challenge to 10 V.S.A. § 5227(b) until such time as it is applied to a live and justiciable case.

*Affirmed.*