Roy v. Woodstock Cmty. Trust, Inc., No. 678-10-07 Wrcv (Cohen, J., Oct. 10, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT
Windsor County

CIVIL DIVISION
Docket No. 678-10-07 Wrcv

David Roy, Mary Roy, Michael Hirschbuhl, Tonia Hirschbuhl,
Richard Roy, Roberta Roy, Glenn Barr, Charlotte Barr,
Richard Burroughs, Shirley Burroughs, and Jay Smith
Plaintiffs

v.

Woodstock Community Trust, Inc.
Defendant

DECISION RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

The central question is whether a servient landowner may change the location of an underground water line easement without the consent of the easement owner.

I.

The relevant facts are undisputed. Defendant Woodstock Community Trust is proposing to build a housing development on a parcel of property in West Woodstock, Vermont. Two of the neighbors, however, own water line easements that cross the parcel in such a way as to hinder the construction of the project as it has been designed and approved by several local zoning and environmental boards. Accordingly, defendant seeks an order permitting relocation of the water lines to the southern and eastern edges of the parcel so that they will not interfere with construction. Defendant represents that relocation of the water lines will neither inconvenience the neighbors nor affect the delivery of water to their homes beyond a brief interruption in service during the relocation of the pipes. Defendant offers to pay all costs of relocation and to provide the neighbors with bottled water until service is restored.

Defendant's rationale is that landowners should be entitled to make reasonable changes to the location of underground easements on their property when doing so would not affect the utility of the easement, burden the easement owner in their use and enjoyment of the easement, or frustrate the purpose for which the easement was created. Restatement (Third) of Property: Servitudes § 4.8(3); Roaring Fork Club, L.P. v. St. Jude's Co., 36 P.3d 1229, 1237 (Colo. 2001); M.P.M. Builders, LLC v. Dwyer, 809 N.E.2d 1053, 1057 (Mass. 2004); R&S Investments v. Auto Auctions, Ltd., 725 N.W.2d 871, 881 (Neb. Ct. App. 2006); Lewis v. Young, 705 N.E.2d 649, 653–54 (N.Y. 1998). Defendant argues that this approach "strikes an appropriate balance between the interests of the respective estate owners by permitting the servient owner to develop his land without unreasonably interfering with the easement holder's rights." Dwyer, 809 N.E.2d at 1057. Defendant contends that an order permitting relocation is necessary to prevent plaintiffs from enlarging the scope of their

easement and thereby "vetoing" a development that has been approved by the local permitting authorities.

Both of the neighbors are plaintiffs in this case, and they respond that unilateral relocation of easements is impermissible under Sweezey v. Neal, 2006 VT 38, ¶¶ 21–25, 179 Vt. 507. Plaintiffs argue that the Sweezey court expressly considered and rejected the Restatement approach espoused by defendant, and instead reaffirmed the traditional common-law rule that the owner of a servient estate may not change the location of a right-of-way without the consent of the easement owner. Plaintiffs contend that Sweezey is indistinguishable from the present case, and that it requires the entry of judgment as a matter of law in their favor.

It is always the role of the court, however, to evaluate whether application of a given rule of law makes sense in the factual context of a particular case. This is particularly true when, as here, commentators have observed that a rule is often phrased more broadly than the interests and policies it is designed to protect. See Annotation, Relocation of Easements (Other Than Those Originally Arising By Necessity); Rights as Between Private Parties, 80 A.L.R.2d 743 § 3 (1961 & Cum. Supp. 2010) (explaining that the language employed by courts discussing the traditional rule against unilateral relocations of easements "is often considerably broader than necessary for a determination of the issues before the court"). Here, therefore, the court must ask whether it makes sense to apply the traditional common-law rule, which most often applies to easements protecting the right of one landowner to travel across the lands of another, in a case involving an underground water-line easement.

In cases involving the right of one landowner to travel across the lands of another, the traditional rule is meant to foster predictability and stability by preserving the bargain struck by the original landowners. The rule presumes that the original landowners agreed upon the physical location of the easement after considering such factors as ease of access, grade, and the impact of the right-of-way on the other uses of the servient property, and seeks to protect that agreement from future unilateral changes. See Sweezey, 2006 VT 38, ¶¶ 21–25; Herren v. Pettengill, 538 S.E.2d 735, 736 (Ga. 2000); Davis v. Bruk, 411 A.2d 660, 665 (Me. 1980). In a sense, then, the principle underlying the rule is preservation of contract; it requires servient landowners to negotiate for the right to make modifications to the physical location of the easement. As a corollary to this principle, the rule prevents servient landowners from realizing unjust economic windfalls by disregarding the restraints that burdened their property at the time of purchase. Sweezey, 2006 VT 38, ¶ 24 (quoting Davis, 411 A.2d at 665).

In cases involving other types of easements, however, the respective landowners do not necessarily have the same expectations with respect to the physical location of the easement. An easement protecting the right of one landowner to take water from a spring, for example, does not necessarily prohibit changes to the location of the pipes so long as any alterations do not impair the ability of the dominant owner to convey the expected amount of water to his property. Sargent v. Gagne, 121 Vt. 1, 12–13 (1958); Davidson v. Vaughn, 114 Vt. 243, 247–48 (1945). Similarly, an easement protecting the right of one landowner to run a power line across the lands of another does not prevent the servient landowner from relocating the power line so long as the relocation does not impose additional costs upon the dominant owner. Millson v. Laughlin, 142 A.2d 810, 814 (Md. 1958); Minard Run Oil Co. v. Pennzoil Co., 214 A.2d 234, 235–36 (Pa. 1965). In these situations, the prevailing

principle is that the dominant owner is entitled to use the easement "only in such manner as is fairly contemplated by the grant," whereas the servient landowner is entitled to use and enjoy his property to the fullest extent consistent with the terms of the easement.  Millson, 142 A.2d at 814.

In this case, the easement protects plaintiffs' right to convey water from the main water line on U.S. Route 4 to their own properties through an underground pipeline, and to maintain the water line.  Plaintiffs do not have an easement in the surface rights, and their interests in conveying water do not depend upon maintaining the physical location of the water lines in their present locations.  As a result, it does not make sense to prevent defendants from changing the location of the underground pipes if doing so would have no bearing on the amount of water conveyed or otherwise impair plaintiffs' ability to maintain the water line.

At the same time, application of the traditional rule in this case would unreasonably frustrate defendant's interest in developing its own property consistent with the terms of the easement.  Defendant did not purchase a property that was burdened by a surface easement, but rather a right of two neighbors to convey water across the parcel through underground easements.  Accordingly, defendant has offered a development proposal that preserves these rights, and therefore there is no inappropriate economic windfall accruing to defendant here.  If anything, application of the traditional rule in this case would confer an economic windfall upon plaintiffs by enlarging the scope of their underground water-line easement into, essentially, a permanent right of travel across the surface of defendant's property, and to possibly preclude any use of defendant's property.

Given these observations, it does not make sense to apply the traditional rule in this case.  Rather than protecting the settled expectations of the respective estate owners, application of the traditional rule here would actually confer an economic windfall upon plaintiffs while simultaneously defeating the reasonable development expectations of defendant.  As such, application of the traditional rule would undermine, rather than protect, the interests and policies that the rule was meant to serve.  For these reasons, the court declines to apply the Sweezey rule in this case, and plaintiffs' motion for partial summary judgment on this question is denied.

## II.

The second question presented is whether defendant is entitled as a matter of law to relocate the water line easements to the locations proposed by its engineer and depicted on the exhibit attached to the engineer's affidavit.  Defendant asserts that it will relocate the water lines to a greenbelt area in which there are no hard surfaces to obstruct access to the lines, that it will prepare for and actually construct the new water lines at no cost to plaintiffs, and that the new water lines will have the same pressure as the existing water lines.

Plaintiffs make clear that they disagree with these representations.  Their main contentions are that (1) the new water lines will be more difficult to maintain because they will be longer and located closer to the property boundaries, and (2) the new water lines may not have the same pressure as the existing water lines.

On the first issue, plaintiffs are certainly entitled to a ruling that any relocation of the pipes must not unreasonably impair their ability to maintain the water lines, since that is one of the interests protected by their easement. Yet plaintiffs do not have any evidence at this juncture other than mere speculation and conjecture to support their contention that the new water lines will be more difficult to maintain than the old lines, either because of their length or because of their location vis-à-vis the property boundaries. Plaintiffs have no expert opinions to this effect.

Instead, the only evidence in the record is from defendant's engineer, who testified that the new pipes will be located in a greenbelt area that preserves the ability of plaintiffs to maintain the water line. Of course, by undertaking the relocation project, defendant assumes the risk of future liability if it turns out that the relocation actually increases the maintenance burden borne by plaintiffs. In the absence of any evidence that such increased costs will necessarily happen, however, there is no genuine issue for trial at this time. See Richards v. Nowicki, 172 Vt. 142, 150 (2001) (explaining that opponents of summary judgment cannot rely upon speculation and hypothesis to defeat a properly-supported motion for summary judgment).

Similarly, on the second issue, plaintiffs are entitled to a ruling that the relocated pipes must deliver the same water quality and pressure as plaintiffs have always enjoyed at their homes. In this regard, however, plaintiffs' interests are protected by the conditions of the land-use permits, which require defendant to construct new water lines that provide plaintiffs with "the same pressure as the existing water lines," and which require defendant to test the water lines for contamination and pressure and certify that the water meets all state quality standards. In other words, the permitting process guarantees that plaintiffs' interests in water pressure and water quality will not be impacted by the proposed easement relocation.

For these reasons, there are no genuine issues for trial at this time as to whether the proposed relocation of the water pipes would affect the utility of plaintiffs' easement, burden the easement owners in their use and enjoyment of the easement, or frustrate the purpose for which the easement was created. A cause of action might, of course, arise in the future if defendant's performance falls below the promises it has made in this action and during the permitting process. For now, however, the court must conclude that defendant is entitled to relocate the easement so long as the conditions noted herein, and in the permits, are met.

III.

The final issue involves the interrelationship between the ongoing permitting proceedings and plaintiffs' claim that the size and intensity of the proposed housing development will invariably result in unreasonable amounts of noise, light, garbage, and traffic. Defendant contends that the permitting proceedings are the forum for plaintiffs' concerns, and that the claim for nuisance is premature to the extent that the proposed housing development has not yet actually been built.

The general rule here is that lawful uses of property must be operated in a reasonable manner so as not to unreasonably interfere with the rights of adjoining property owners. Trickett v. Ochs, 2003 VT 91, ¶ 36, 176 Vt. 89. Hence, although it is generally permissible for an owner to operate his property as a pig farm, the farm may nevertheless become a

4

nuisance if the owner allows chicken manure and dead animals to accumulate at the borders of his property. Coty v. Ramsey Assocs., 149 Vt. 451, 457 (1988). In other words, the nuisance determination is a fact-specific inquiry as to the extent of the interference and the reasonableness of the challenged activities in light of the particular circumstances of the case. Id.

Here, the final conditions of operation are not yet known. Plaintiffs have appealed the town permit and the Act 250 permit to the environmental court, and therefore still have an opportunity to present their arguments regarding the impacts of the proposed development on their properties. It is certainly conceivable that the environmental court will impose new or different conditions that require defendant to amend its development plan. Given the ongoing nature of the permitting proceedings, this court is not now in a position to make any determination as to whether the existing plan constitutes a nuisance. See Wild v. Brooks, 2004 VT 74, ¶ 10, 177 Vt. 171 (explaining that "courts must be cautious about issuing injunctions where changes in the circumstances giving rise to the alleged nuisance are likely to occur"). If and when the proposed development is finally approved to be built, plaintiffs may assert a cause of action for nuisance based on the noise, light, garbage, and traffic that would be generated by the proposed housing development as it is required to operate under the terms of its final land use permits. Id., ¶ 18. Until then, however, the cause of action is not ripe.

For these reasons, it does not make sense to enter summary judgment on the merits of the nuisance claim at this time, or otherwise to make any factual determination as to whether the proposed development constitutes a nuisance. At the same time, there is no live controversy as to whether the final development plan constitutes a nuisance, since the plan is not yet final Accordingly, the court will dismiss the claim without prejudice at this time. In the event that the result of the town permitting process and the Act 250 proceedings is to authorize development, plaintiffs may assert a new cause of action based upon the impacts of the development under the terms of the final permits.

**ORDER**

(1)     Defendant's Motion for Summary Judgment on Counterclaim (MPR #13), filed Feb. 18, 2010, is ***granted***;

(2)     Defendant's Motion for Partial Summary Judgment (MPR #14), filed Feb. 18, 2010, is ***denied***, but the nuisance cause of action is ***dismissed without prejudice***;

(3)     Plaintiff's Cross-Motion for Partial Summary Judgment (MPR #15), filed Mar. 8, 2010, is ***denied***; and

(4)     Defendant's Motion to Amend Discovery Schedule (MPR #17), filed April 22, 2010, is ***granted***.

Dated at Woodstock, Vermont this _____ day of October, 2010.

_____

Hon. William D. Cohen
Superior Court Judge