BOLGER, Justice, concurring.
*937 I agree with the court's ultimate conclusion that the mootness doctrine does not apply to these cases. But I would reach this conclusion on different grounds. The court's reliance on the public interest exception to the mootness doctrine is misplaced. The court concludes that every commitment case involves important issues that are capable of repetition because "an opinion considering whether a commitment order in one case was supported by sufficient evidence will likely be useful as guidance by analogy to future commitment proceedings."[1] But as we have recognized, this reasoning could justify review of "every moot case in general."[2] I am concerned that our review of such routine controversies on public interest grounds will undermine the basis for the public interest exception.
We decline to address moot controversies because "the very nature of our judicial system renders it incapable of resolving abstract questions or of issuing advisory opinions which can be of any genuine value."[3] If the controversy is moot, the litigants have less incentive to make their best arguments.[4] And regardless of the arguments' quality, we will "lay down rules that may be of vital interest to persons" who will face future proceedings-this is "a harsh rule" for future litigants, who will be bound by decisions where opposing views were not vigorously presented because the controversy was moot.[5]
The collateral consequences doctrine, in contrast, "allows courts to decide otherwise-moot cases when a judgment may carry indirect consequences in addition to its direct force."[6] Several years ago we recognized that the collateral consequences from a person's first involuntary commitment order were sufficient to require review of an otherwise-moot appeal.[7] But we later decided that the collateral consequences exception did not apply to a respondent who had previous commitment orders because we were "unconvinced that the mere possibility of additional but unparticularized collateral consequences automatically justifies substantive review of every subsequent involuntary commitment order entered against a respondent."[8]
I disagree with the latter proposition. There is no evidence that a previous commitment order inoculates the respondent from the general consequences of a subsequent commitment; I would not require any additional showing to allow review. We do not require such a showing in the criminal law; instead we decide criminal cases even after defendants complete their sentences because we assume that a criminal judgment always carries collateral consequences.[9] Many other state courts similarly allow review of expired involuntary commitment orders.[10] I would review *938 these orders because they have continuing collateral consequences.

Supra page 928-29.

In re Gabriel C ., 324 P.3d 835, 840 (Alaska 2014).

Moore v. State , 553 P.2d 8, 23 n.25 (Alaska 1976), superseded on other grounds by statute .

State v. Keep , 409 P.2d 321, 325 (Alaska 1965) (citing United States v. Evans , 213 U.S. 297, 300, 29 S.Ct. 507, 53 L.Ed. 803 (1909) ).

Id. (quoting Evans , 213 U.S. at 300, 29 S.Ct. 507 ).

In re Joan K ., 273 P.3d 594, 597-98 (Alaska 2012) (quoting Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs. , 146 P.3d 991, 994-95 (Alaska 2006) ).

Id. at 598.

In re Mark V ., 324 P.3d 840, 845 (Alaska 2014).

See State v. Carlin , 249 P.3d 752, 764 (Alaska 2011) (holding that a deceased defendant's appeal was not moot).

See In re Walter R ., 850 A.2d 346, 350 (Me. 2004) (holding that collateral consequences of an involuntary commitment order precluded application of the mootness doctrine); State v. K.J.B. , 362 Or. 777, 416 P.3d 291, 298 (2018) (denying motion to dismiss appeal because state had not shown the absence of collateral consequences); State v. K.E.W. , 315 S.W.3d 16, 20 (Tex. 2010) (holding that the mootness doctrine did not apply to an expired involuntary commitment order); State v. J.S. , 174 Vt. 619, 817 A.2d 53, 56 (2002) (recognizing the continuing effects of negative collateral consequences, including legal disabilities and social stigma, from being adjudicated mentally ill and then involuntarily hospitalized); In re Det. of H.N. , 188 Wash.App. 744, 355 P.3d 294, 298 (2015) (permitting review of expired involuntary commitment order due to likely collateral consequences).