2008 VT 136

# In re Paul Collette

[969 A.2d 101]

No. 07-040

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 12, 2008

Motion for Reargument Denied December 30, 2008

*Matthew F. Valerio*, Defender General, *Dawn Matthews*, Prisoners' Rights Office, and *Robert Gardner*, Law Clerk (On the Brief), Montpelier, for Petitioner-Appellant.

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Respondent-Appellee.

¶ 1. **Burgess, J.** Petitioner appeals from the trial court's dismissal of his request for post-conviction relief (PCR) pursuant to 13 V.S.A. § 7131. Petitioner complained that his sentence for Driving Under the Influence-Second Offense (DUI-2) was enhanced on account of an improper prior conviction for a first offense of DUI-1, claiming the earlier plea of guilty was uncounseled in violation of the Sixth Amendment, and without the recitations necessary for a valid plea under Rule 11 of the Vermont Rules of Criminal Procedure. Because petitioner was discharged from his sentence before the trial court reviewed the claim, the court dismissed the petition as moot. We affirm.

¶ 2. Following his conviction and sentence for DUI-2 on October 11, 2005, petitioner filed this petition for PCR pro se on November 1, 2005, collaterally attacking his 1992 DUI-1 conviction. At the time of filing, petitioner was on probation under a suspended sentence of eighteen months to five years for his 2005 DUI-2, and so was a person "in custody under sentence of a court" entitled to seek PCR pursuant to § 7131. See *State v. Wargo*, 168 Vt. 231, 234-35, 719 A.2d 407, 410 (1998) (holding that probationers were "in custody" for purposes of the PCR statute). While still on probation, and with the help of an attorney, petitioner filed an amended PCR complaint on April 7, 2006, alleging violations of his right to counsel and Rule 11, and requesting the court to "vacate the convictions and sentences entered against him."

¶ 3. The next month, on May 24, 2006, petitioner was discharged from his probation and underlying sentence for the DUI-2 conviction. Asserting lack of jurisdiction due to the expiration of the sentence, the State moved for dismissal on August 17, 2006. The trial court dismissed the action as moot on December 20, 2006, reasoning that since the sentence was over, any further court action to "undo the past and reduce sentences that petitioner has already served" would be futile, regardless of jurisdiction. Petitioner appeals, arguing that dismissal was in error because he met the jurisdictional requirements of § 7131 when the action was commenced.

¶ 4. That the court had jurisdiction when the PCR was filed does not mean the action was not moot when the trial court considered the motion to dismiss. An action "becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *State v. Lee*, 2007 VT

7, ¶ 10, 181 Vt. 605, 924 A.2d 81 (mem.) (quotation omitted). In this regard, the trial court correctly observed that it was obvious there was no relief left to be ordered: assuming the 1992 plea of guilty to DUI-1 was assailable procedurally, petitioner was no longer subject to any enhanced sentence that could be corrected by court order. Regardless of § 7131 jurisdiction over the subject matter of PCR, the trial court also correctly observed that it could not reverse time and undo a sentence that had already passed. As determined by the trial court, the PCR petition was moot.

■ ¶ 5. While not briefing the issue at any length, petitioner posits that, contrary to the court's conclusion, he remained vested in having "one less conviction" and in getting his "license back sooner"[1] — presumably on the theory that PCR would result in the erasure of his earlier 1992 DUI-1 conviction. Petitioner misapprehends the nature of the post-conviction relief afforded by § 7131 to nullify enhancement of a current sentence based on a prior conviction determined, in hindsight, as procedurally faulty, but where the prior conviction itself is final because it was never appealed or challenged in a timely fashion. As we held in State v. Boskind, 174 Vt. 184, 807 A.2d 358 (2002), where the sentence on an earlier conviction has completely expired, a petitioner may nevertheless collaterally attack the validity of the prior DUI conviction while "in custody under sentence" from a subsequent DUI conviction, but " 'may do so only in the context of a challenge to the enhanced sentence for which he is in custody. In other words, a prisoner may attack his current sentence by a [post-conviction] challenge to the constitutionality of an expired conviction if that conviction was used to enhance his current sentence.' " Id. at 193, 807 A.2d at 365-66 (quoting Young v. Vaughn, 83 F.3d 72, 77-78 (3d Cir. 1996)) (emphasis added).

¶ 6. The dissent decries a lack of caselaw for this proposition, but it is stated in Boskind, and in its reference to Vaughn. Vaughn explained that, "although the district court lacked jurisdiction over . . . petitions attacking two convictions whose sentences had expired, we could review those sentences because of their collateral enhancement of the sentence that [petitioner] was still serving." 83 F.3d at 76 (emphasis added) (citing Clark v.

---

[1] See 23 V.S.A. § 1205(m) (establishing a longer suspension period for those convicted of a second violation of § 1201).

*Pennsylvania,* 892 F.2d 1142, 1143 n.2 (3d Cir. 1989)). That *Vaughn* meant no jurisdiction remained to actually strike the earlier conviction is confirmed by its reliance on *Clark,* which considered a petitioner's attacks on two 1974 convictions after the sentences imposed had run, along with an attack on a 1979 conviction and a then-pending sentence enhanced because of the previous convictions, holding that "[a]lthough *subject matter jurisdiction is lacking* over the two earlier petitions, these convictions nonetheless are subject to *limited review* in the third petition because of their collateral consequences on the later 1979 conviction." 892 F.3d at 1143 n.2 (emphasis added).

 ¶ 7. That the prior conviction remains final under *Vaughn* and *Boskind* is an entirely unsurprising and logical result of defendant's election not to appeal or pursue any timely challenge to his earlier conviction. The finality of undisputed judgments is no stranger to our law, which is replete with deadlines, and indeed is expressly favored despite belatedly perceived flaws. See *Lackawanna County Dist. Att'y v. Coss,* 532 U.S. 394, 402-03 (2001) (explaining that collateral attack on unchallenged convictions is untenable given the primary and "compelling interest" in the finality of convictions when, because of defendant's choice not to seek review, the "conviction becomes final and the State that secured the conviction obtains a strong interest in preserving the integrity of the judgment").[2] Moreover, correcting a wrongly enhanced sentence in no way depends on overturning an expired conviction. Petitioner offers no justification why he is now entitled to an opportunity, denied all other convicted persons not charged as repeat offenders, to overturn a conviction never contested as amply provided for by law.

---

[2] *Lackawanna* settled federal law, as presaged in *Vaughn,* that no challenge could be maintained against a prior conviction, once its sentence had expired, through an attack on a current sentence enhancement based on that prior conviction. "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Lackawanna,* 532 U.S. at 403. Unlike our more generous ruling in *Boskind,* allowing petitioners to contest a new sentence enhanced due to an allegedly faulty, yet final, conviction, 174 Vt. at 188-89, 807 A.2d at 362-63, *Lackawanna* foreclosed even those attacks in federal court: "If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition . . . on the ground that the prior conviction was unconstitutionally obtained." 532 U.S. at 403-04.

■ ¶ 8. Under *Boskind*, collateral relief in these circumstances requires that the enhanced sentence be stricken in the event of a meritorious claim, but there is no jurisdiction to vacate the long final 1992 conviction. Thus, petitioner could achieve neither the goal of one less conviction, nor an earlier reinstatement of his license. As concluded by the trial court, whatever the enhancement of defendant's 2005 sentence by virtue of the prior conviction, the sentence was finished, irremediable, and moot upon petitioner's discharge from probation and his sentence.

■ ¶ 9. The dissent advances a number of objections to the conclusion that petitioner's claim is moot, none of which withstand scrutiny. First, the dissent posits that, as it forewarned in *Boskind*, 174 Vt. at 199, 807 A.2d at 370 (Dooley, J., dissenting), this case proves that *Boskind* can operate to deprive defendants facing an enhanced sentence based on a prior conviction of a meaningful challenge to the validity of that earlier conviction so as to avoid the enhancement. We held in *Boskind* that, except where a defendant claimed a prior conviction was obtained in violation of his Sixth Amendment right to counsel, attacks on the validity of prior convictions may not be made before sentencing, but must be pursued under the PCR statutes after an enhanced sentence is imposed. 174 Vt. at 191, 807 A.2d at 364. Given that PCR proceedings afforded greater opportunities to obtain necessary transcripts and to present evidence not ordinarily available at the time of sentencing, and the interest in avoiding protracted sentencing hearings, the PCR process was determined better to "safeguard[] a defendant's rights while promoting the State's interest in finality of judgments." *Id.* That determination remains sound and ultimately augments, rather than limits, already existing and ample avenues by which defendants can challenge the procedural validity of past convictions.

■ ¶ 10. The avenues of redress available to a claimant seeking to challenge a prior plea are myriad. First, *Boskind* did nothing to alter the settled rule that petitioners asserting a denial of their Sixth Amendment right to counsel may later raise the claim directly in the enhanced penalty proceeding. 174 Vt. at 187, 807 A.2d at 361. Petitioner here failed to do so. "Our rules require a party to raise and preserve all objections at trial . . . ." *State v. Yoh*, 2006 VT 49A, ¶ 36, 180 Vt. 317, 910 A.2d 853; see also *Daniels v. United States*, 532 U.S. 374, 382 (2001) (noting, in the

context of federal PCR proceedings, that a "defendant may challenge a prior conviction as the product of a *Gideon* [Sixth Amendment] violation . . . , but generally only if he raised that claim at his federal sentencing proceeding"). Accordingly, petitioner's claim in this regard was waived.

¶ 11. Second, neither *Boskind* nor our holding today undermines any of the several independent options otherwise available to petitioner and other defendants by which they can freely challenge the procedural validity of earlier guilty pleas. For example, defendants may assert a deficiency in a guilty plea pursuant to a timely motion to withdraw under V.R.Cr.P. 32(d). Such a motion may be made prior to or within 30 days of the entry of judgment, and "at any time" by a defendant not subject to incarceration. *Id.* In addition, defendants, including this petitioner, may file for post-conviction relief challenging the validity of their plea at any time while they remain "in custody under sentence," including while on probation. 13 V.S.A. § 7131; *State v. Yates*, 169 Vt. 20, 22, 726 A.2d 483, 485 (1999). Petitioner here was convicted and sentenced on his first DUI offense in September 1992, and was not discharged from probation until nearly August 1994, providing a two-year window in which to obtain post-conviction relief based on the allegedly deficient plea. That petitioner sat on his rights for two years cannot be attributed to *Boskind*.

¶ 12. Nor is it the case — contrary to the dissent's assertion — that petitioners who choose for whatever reason to ignore these more timely procedures and defer the filing of a PCR petition until *after* an enhanced sentencing proceeding will invariably find the claim mooted by completion of their sentence. Petitioner here, for example, filed his original pro se petition within three weeks of sentencing and counsel was appointed less than a month later. Nevertheless, his amended petition was not filed until *five* months later, with no apparent effort to alert the court to a need for expedited handling, notwithstanding the clear warning in *Boskind* that petitioner's potential discharge from probation, which occurred seven weeks later, would moot the matter. Had petitioner filed a more timely amended petition or a motion to expedite, there is no evident reason why the petition could not have been heard and resolved before his discharge from probation. The so-called promise in *Boskind* upon which the

dissent relies was no more than a commitment to revisit the issue if subsequent cases revealed the dissent's prediction of a "right without a remedy" to be "a real — not theoretical — problem." 174 Vt. at 192, 807 A.2d at 365. As the record here shows, petitioner's circumstance cannot be separated from his own past inattention or inaction, and the dissent's concern for a lack of remedy appears to remain abstract, except for the less than diligent.

¶ 13. The dissent further proffers several negative collateral consequences relating to defendant's enhanced sentence that should allegedly keep the controversy alive. See *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 101 (1997) (even if otherwise moot, a case may retain legal life if "negative collateral consequences are likely to result" from the action under review). None of those adverse consequences, however, were curable, even had petitioner prevailed in his claim of Rule 11 noncompliance. There was, quite literally, *no relief to be obtained from the trial court when it dismissed this case.*

¶ 14. First, the dissent notes that petitioner received a mandatory enhanced license suspension based on the earlier conviction, which remained in effect even after he completed his sentence. Assuming, for the sake of argument, that petitioner's plea of guilty to the first DUI was so procedurally deficient as to invalidate enhancement of his sentence for the second DUI, it does not follow that the enhanced license suspension was similarly invalid. Nor does it follow at all, despite the dissent's assumption, that petitioner would be entitled to immediate reinstatement of his license. While petitioner may seek to "vacate, set aside or correct the sentence" pursuant to the PCR statute, 13 V.S.A. § 7131, his license suspension was no sentence. It is settled that suspension is "a civil, not a criminal, sanction." See *State v. Strong*, 158 Vt. 56, 60-62, 605 A.2d 510, 513-14 (1992) (characterizing license suspension as a remedial measure, the "nonpunitive purpose" of which was "clear and compelling"); see also *In re LaMountain*, 170 Vt. 642, 643, 752 A.2d 24, 25 (2000) (mem.) (PCR petitioner challenging guilty plea was "not 'in custody,' and the court lacked jurisdiction to hear his petition" where all that remained was civil suspension of petitioner's license). Regardless of the merits of the PCR, petitioner would remain twice convicted of DUI, and the length of his license suspension was beyond the reach of post-conviction relief.

¶ 15. The dissent next asserts that, should petitioner's claim be successful, he would be entitled to reconsideration of the $400 fine that was part of his criminal sentence for the second DUI. Several flaws inhere in this argument. First, petitioner did not raise the claim below and therefore did not preserve it for consideration on appeal. *Yoh*, 2006 VT 49A, ¶ 36. Second, while some courts have held that the involuntary payment of a fine may constitute an adverse collateral consequence sufficient to defeat a claim of mootness, the fine and payment here were the result of a plea agreement accepted by the court as voluntary, and petitioner makes no claim or showing to the contrary. Compare *Commonwealth v. Viglione*, 2004 PA Super 22, ¶ 20, 842 A.2d 454 (payment of fine was not voluntary and did not moot appeal where defendant was tried and found guilty and paid fine pending appeal to defer imprisonment), with *State v. Arpi*, 818 A.2d 48, 51 (Conn. App. Ct. 2003) (defendant's payment of fine pursuant to plea agreement was voluntary and rendered appeal moot).

¶ 16. Moreover, our recognition of negative collateral consequences as an exception to mootness is limited to situations where proceeding to a decision in an otherwise dead case is "justified by a sufficient prospect that the decision will have an impact on the parties." *All Cycle, Inc. v. Chittenden Solid Waste Dist.*, 164 Vt. 428, 432, 670 A.2d 800, 803 (1995) (quotation omitted). For example, we have found "negative collateral consequences are likely" from the recognized stigma of an adjudication of mental illness and involuntary hospitalization, so as to keep an appeal alive despite termination of the temporary hospitalization. *State v. J.S.*, 174 Vt. 619, 620, 817 A.2d 53, 55-56 (2002) (mem.). Petitioner made no showing whatsoever that his $400 fine, already well below the $750 maximum fine for first-offense DUI under 23 V.S.A. § 1210(b), was "likely" to be reduced upon reconsideration. Petitioner offered no support for the notion that his fine, arrived at by his plea agreement, was enhanced at all. Certainly there was no particular enhancement under the DUI-recidivist statute providing for up to a $1500 fine for second-offense DUI. 23 V.S.A. § 1210(c). Any prospect that some of the fine would be refunded is slight to nil, and is insufficient to justify the continued application of judicial resources towards a remedy that is purely speculative.

¶ 17. Finally, the dissent contends that the controversy here remains live because the 1992 DUI conviction carries the

possibility of unspecified future negative consequences. As earlier noted, however, the challenge here is to the enhanced sentence rather than the fact of petitioner's long-final prior DUI conviction. Furthermore, apart from the situation where a social stigma attached to an involuntary commitment to a mental hospital, *J.S.*, 174 Vt. at 620, 817 A.2d at 55-56, we have declined to hold that the mere possibility of negative collateral consequences is sufficient to avoid a finding of mootness. See *In re Moriarty*, 156 Vt. 160, 163-65, 588 A.2d 1063, 1064-65 (1991) (holding that appeal of officer's administrative transfer was moot and rejecting claim that possibility of adverse affect on unspecified "employment prospects" was sufficient negative collateral consequence to avoid mootness).

¶ 18. Contrary to the dissent's characterization, we renege on no promise to solve a problem, should one emerge, of defendants being denied relief from enhanced sentences on account of procedurally suspect prior convictions. Petitioner's is one case brought to our attention in the six years since *Boskind* where the remedy sought is moot on account of the sentence ending before his PCR was decided — here, apparently, just as likely the result of a fortuitous discharge from an indeterminate probation as from the ordinary passage of time on this docket in the trial court. Petitioner could have requested an expedited hearing, but did not. His petition might have been more clearly or more timely pled, but was not. Petitioner's complaint was one of probably dozens, if not hundreds, of otherwise nondescript PCR and other petitions filed yearly with the superior court. Their merits are important, but it should not be the obligation of the superior courts, as the dissent would impose, to unilaterally identify and analyze, without prompting or assistance from counsel familiar with the case, that one complaint is more worthy of attention than another. In any event, it is not at all clear that in this case, or in any other, petitioner has been effectively deprived of an opportunity to correct an erroneously enhanced sentence by operation of *Boskind* alone.

¶ 19. Accordingly, we find no exception to the mootness doctrine, and no basis to disturb the trial court judgment.

*Affirmed.*

¶ 20. **Dooley, J.**, dissenting. Not long ago, we made the following statement:

> If PCR decisions in cases of collateral attack on predicate DUI convictions demonstrate that defendants are serving all or most of their sentence prior to a PCR determination that the predicate convictions used for enhancement are constitutionally infirm, the Supreme Court by administration or rule may calibrate a practical remedy to a real — not theoretical — problem.

*State v. Boskind*, 174 Vt. 184, 192, 807 A.2d 358, 365 (2002).

¶ 21. Despite this statement, today's majority decision demonstrates two realities: (1) this Court will not honor the commitment in the above language from *Boskind*; and (2) because of the mootness ruling, post-conviction relief is an even more limited remedy than the majority in *Boskind* understood it to be. As of today, whatever effective relief remained after *Boskind* now exists only in theory. While the majority decision, and most of this dissent, is about the second point noted above, I return to the first point at the end of the dissent.

¶ 22. The majority apparently recognizes that petitioner had the right to challenge the validity of his underlying DUI conviction in this PCR proceeding because, at the time he filed the PCR petition, he was still serving the enhanced sentence from the latest DUI conviction. Yet, the majority effectively nullifies that right by upholding the trial court's rigid and flawed mootness ruling. In support of that ruling, the majority makes two remarkable pronouncements aimed at demonstrating that petitioner will not suffer any collateral consequences as the result of the dismissal of his petition. According to the majority, (1) even if petitioner were to prevail in challenging his enhanced sentence by demonstrating the unlawfulness of his predicate DUI conviction, that conviction would continue to have full force and effect apart from supporting the current enhanced sentence; and therefore, (2) the mandatory enhanced suspension of petitioner's driver's license resulting in part from the earlier conviction remains in effect and is not an adverse collateral consequence sufficient to preclude his petition from being dismissed as moot. Both of these pronouncements are plainly wrong,[3] and therefore I dissent.

---

[3] Also plainly wrong, although tangential to the thrust of this dissent, is the majority's ruling on petitioner's ability to bring a PCR petition challenging the

¶ 23. To fully understand the present case, we must return to *Boskind*, a case in which the defendant argued that he should be able to challenge his predicate DUI conviction directly in the sentencing phase of a later DUI criminal case that resulted in an enhanced sentence. The divided Court in *Boskind* held that a defendant convicted of a subsequent DUI could not have his or her sentence enhanced if the predicate DUI conviction was unlawfully based on a plea of guilty without substantial compliance with V.R.Cr.P. 11, but further concluded that post-conviction relief in the superior court was the proper and only procedure for challenging the predicate conviction. 174 Vt. at 185, 807 A.2d at 360 (upholding right of defendant facing enhanced DUI sentence to attack "the constitutionality of a prior [DUI] conviction used to enhance the defendant's current sentence"). Thus, *Boskind* requires a defendant to challenge the predicate conviction in a separate PCR proceeding in the superior court, and then, if the PCR petition is successful, to return to the DUI sentencing court to have the *improperly enhanced sentence stricken.*

¶ 24. Justice Johnson and I dissented in *Boskind* from the Court's holding that a defendant's challenge to the predicate conviction had to be made in a subsequent PCR proceeding unless the claim was that the prior conviction had been obtained in violation of the right to counsel. Our concern was that, as a practical matter, in most cases a defendant would have already served the enhanced sentence by the time any relief was forthcoming in the PCR proceeding, and thus defendants would be effectively precluded from obtaining any real relief. *Id.* at 193-94, 807 A.2d at 366 (Dooley, J., dissenting). The Court responded to that concern with the statement I quoted at the start of this dissent.

---

denial of the right to counsel in the proceeding leading to the predicate conviction. The majority wrongly states that petitioner was precluded from raising his challenge in the PCR proceeding because he failed to raise it in the proceeding that imposed the enhanced sentence. Although petitioner could have raised such a claim directly in the enhanced sentencing proceeding, he was not required to do so. As the majority acknowledges, the law is settled that a denial-of-counsel claim "may" be raised directly in the enhanced sentencing proceeding. But nothing in *Boskind* or the federal case law upon which it relied precludes defendants from later raising such claims in PCR proceedings. Indeed, we suggested the opposite in holding "that a defendant's collateral challenge to a prior conviction upon which the State relies to enhance a sentence is not limited solely to claims of invalidity based upon a violation of the right to counsel." *Boskind*, 174 Vt. at 188, 807 A.2d at 362.

¶ 25. This is the first case since that statement in *Boskind* involving challenges to predicate convictions to prevent their enhancement effect. The majority responds by blaming the victim and adopting an onerous mootness rule to be sure that DUI defendants have no way out of the useless-remedy box. As I discuss at the end of this dissent, this case demonstrates exactly the result Justice Johnson and I predicted in *Boskind*.

¶ 26. It is undisputed that petitioner finished his enhanced criminal sentence before the superior court resolved his PCR petition. Nonetheless, because petitioner had filed his petition before the enhanced sentence was served, the court retained jurisdiction over the petition. Petitioner wanted to move forward on the petition because of the obvious negative collateral consequences stemming from the allegedly unlawful predicate conviction, including the continuing potential for the conviction to enhance penalties in any subsequent criminal proceedings and the continuing suspension of petitioner's driver's license. Instead of recognizing these obvious collateral consequences, the superior court declared the petition moot, thereby making the *Boskind* remedy even more ineffective than it already was. The majority upholds this position.

¶ 27. Even if this case did not implicate the effectiveness of the remedy specified in *Boskind*, I would disagree with the mootness ruling. "The central question of all mootness problems is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' " *All Cycle, Inc. v. Chittenden Solid Waste Dist.*, 164 Vt. 428, 432, 670 A.2d 800, 803 (1995) (quoting 13A C. Wright, et al., Federal Practice & Procedure § 3533, at 212 (1984)). One way that a decision may still have an impact is if it has negative collateral consequences for one of the parties. *State v. J.S.*, 174 Vt. 619, 620, 817 A.2d 53, 55 (2002) (mem.). Generally, "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York*, 392 U.S. 40, 57 (1968). This is true even if the criminal sentence for the challenged conviction has been served. *Id.* at 54-58 (holding that defendant had substantial stake in judgment of conviction that survived completion of sentence imposed upon him); see *Pennsylvania v. Mimms*, 434 U.S. 106, 108 n.3 (1977) (citing prior United States Supreme Court cases holding "that the possibility of a criminal defendant's

suffering 'collateral legal consequences' from a sentence already served permits him to have his claims reviewed here on the merits"); cf. *Spencer v. Kemna*, 523 U.S. 1, 8, 14 (1998) (acknowledging presumption that wrongful criminal conviction has continuing collateral consequences even after it has been served, but declining to presume adverse collateral consequences for prior parole revocation).[4]

¶ 28. Thus, in a case where a defendant convicted of a state crime was seeking to overturn an eleven-year-old federal conviction based on a guilty plea, the United States Supreme Court held as follows:

> Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid.

*United States v. Morgan*, 346 U.S. 502, 512-13 (1954) (footnote omitted); see also *Sibron*, 392 U.S. at 55 (acknowledging "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences"). There can be no doubt

---

[4] This Court has stated that "[a]n exception to the mootness doctrine exists when negative collateral consequences are *likely* to result from the action being reviewed," *J.S.*, 174 Vt. at 620, 817 A.2d at 55 (emphasis added), but at the same time applied the exception based on the fact that negative consequences "may" result. *Id.* at 620, 817 A.2d at 56 (noting that negative collateral consequences of being adjudicated mentally ill "may" continue as legal disabilities and social stigmatization); see also *State v. Condrick*, 144 Vt. 362, 363-64, 477 A.2d 632, 633 (1984) (noting generally that cases are not moot "when negative collateral consequences are likely to result," but finding that case at hand was not moot because "even after discharge, the collateral consequences . . . may continue to plague a defendant"). The Vermont cases applying this exception have all been involuntary-commitment cases. The first was *State v. O'Connell*, 136 Vt. 43, 45, 383 A.2d 624, 625 (1978), where we held that a discharged person who was involuntarily committed continued to suffer negative collateral consequences because "[t]he legal disabilities radiating from the label of mentally incompetent are myriad." Our later cases then began using the "likely to result" language without any reference to, or support from, Supreme Court or other case law. See, e.g., *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 101 (1997) (stating that case is not moot if negative collateral consequences "are likely to result," and noting that this exception to mootness doctrine applies in involuntary commitment cases because of social stigmatization that remains).

that petitioner's 1992 DUI conviction carries exactly these kinds of negative collateral consequences.

¶ 29. The majority attempts to avoid this well-settled exception to mootness by making the extraordinary statement that because petitioner is challenging the validity of his prior DUI conviction "in the context of" his challenge to the enhanced sentence he received in the later DUI proceeding, his prior conviction would remain intact even if he were to prevail in his PCR petition. Under this reasoning, if petitioner were allowed to proceed with his PCR petition and demonstrate the invalidity of the prior conviction, he would still be subject to all of the adverse collateral consequences of that conviction, including presumably another enhanced sentence should he be convicted of DUI in the future. This would require him to challenge once again an underlying conviction already shown to be invalid, thereby placing him on the treadmill that the majority has created for him. Not surprisingly, the majority cites no law in support of this view, which makes no sense.

¶ 30. The bottom line is that a petitioner cannot overturn an enhanced sentence without demonstrating the unlawfulness of the underlying conviction; therefore, striking the underlying conviction is a necessary predicate to overturning the enhanced sentence. Nothing in our PCR statute suggests otherwise. Section 7131 of Title 13 is patterned after the federal PCR statute, 28 U.S.C. § 2255 and provides "a 'special statutory remedy in the nature of habeas corpus.' " *In re Stewart*, 140 Vt. 351, 355, 438 A.2d 1106, 1107 (1981) (quoting *In re Clark*, 127 Vt. 555, 557, 255 A.2d 178, 180 (1969)). "The statute permits a collateral attack upon Vermont convictions or sentences which are defective under the Constitution, statutory law, or 'otherwise subject to collateral attack.' " *Id.* (quoting 13 V.S.A. § 7131). Here, although the ultimate goal of the PCR petition is to overturn the enhanced sentence, the only route to doing so, as set forth in *Boskind*, is to successfully attack the prior conviction that led to the enhanced sentence. When a sentence is the result of an unfairly induced guilty plea, the remedy in a PCR proceeding is to vacate the plea. *In re Dussault*, 128 Vt. 135, 136, 259 A.2d 776, 776-77 (1969). PCR proceedings are designed to challenge the validity of past judgments, *People v. Padilla*, 907 P.2d 601, 608 (Colo. 1996) (en banc), and obviously, if those judgments are deemed invalid, they do not remain as valid judgments. Cf. *State v. Prince*, 781 S.W.2d 846,

851 (Tenn. 1989) (stating that authorized route for attacking facially valid final judgment of conviction used to enhance later sentence is by PCR petition seeking to invalidate prior conviction; if defendant is successful, he may then seek invalidation of enhanced sentence).

¶ 31. *Boskind* does not alter that fact. In *Boskind*, we quoted a federal appeals court for the proposition that a petitioner " 'in the context of' " an attack on his current sentence in a PCR proceeding may challenge " 'the constitutionality of an expired conviction.' " 174 Vt. at 193, 807 A.2d at 366 (quoting *Young v. Vaughn*, 83 F.3d 72, 77-78 (3d Cir. 1996)). The Third Circuit's use of the term "in the context of" plainly was not intended to mean that a successful attack on the lawfulness of the underlying conviction would leave that conviction intact. Indeed, the court in *Vaughn* agreed with a prior United States Supreme Court decision that it made little difference as a practical matter whether a petitioner indicated that he was challenging the underlying conviction or the later enhanced sentence. In either case, "[t]he expired conviction may then be attacked as having improperly enhanced or resulted in the present sentence." *Vaughn*, 83 F.3d at 79 (holding that petitioner "may attack his [predicate] conviction in the context of his challenge to the sentence he is presently serving"); cf. *Boskind*, 174 Vt. at 196, 807 A.2d at 368 (Dooley, J., dissenting) (observing that allowing challenge directly in enhancement proceeding would not only deny use of prior conviction in enhancement, but that "[a] successful PCR challenge [would] entirely overturn the judgment"). The court in *Vaughn* indicated that it was following *Clark v. Pennsylvania*, 892 F.2d 1142, 1145 (3d Cir. 1989), wherein the court held that the "reviewability of [expired] convictions nonetheless remains before us . . . because of their collateral enhancement consequences on the [later] sentence." Thus, notwithstanding the majority's argument to the contrary, the Third Circuit cases do not directly address the question of what becomes of an invalid predicate conviction used to enhance a later sentence.

¶ 32. Even if we were to assume that an invalidated conviction in the context of a challenge to a later enhanced sentence technically remained a valid conviction, there are obvious collateral consequences in this case that still would preclude a finding of mootness. For one thing, declaring petitioner's PCR action moot deprived petitioner of the opportunity of demonstrating the inval-

idity of the prior conviction, thereby exposing him to further enhanced sentences in the event he is later charged with another DUI. For that reason, other courts have refused to find such petitions to be moot in similar circumstances. See, e.g., *City of Ottawa v. Lester*, 822 P.2d 72, 74 (Kan. Ct. App. 1991) (petitioner's PCR action seeking withdrawal of guilty plea in prior DUI case was not moot because should petitioner prevail in his PCR action, it could impact potential penalties in any subsequent prosecution); *Toler v. Motor Vehicle Admin.*, 817 A.2d 229, 232-33 (Md. 2003) (even though petitioner's suspended license had been restored, his action seeking review of license suspension was not moot because if his license were to be suspended subsequently, he would face increased penalties). In short, because petitioner was challenging the validity of his underlying DUI conviction, and because the continued validity of that conviction created the potential for increased future penalties against petitioner, his PCR petition is not moot.

¶ 33. But even putting aside the possibility of future enhanced sentences, there is another obvious adverse collateral consequence preventing a finding of mootness — the continued suspension of petitioner's driver's license. Following petitioner's second DUI conviction in 2005, he faced a mandatory license suspension of eighteen months, 23 V.S.A. § 1208(a), and was required to complete or show substantial progress in completing a therapy program, *id.* § 1209a(a)(2). In contrast, the license suspension applicable for a first offense is only ninety days, *id.* § 1206(a), and the therapy requirement may be imposed only if a counselor deems it necessary, *id.* § 1209a(a)(1). Thus, if his 2005 conviction had been a first offense, petitioner most likely would have had his license reinstated after ninety days. Instead, petitioner's license suspension was apparently still in force when the superior court rendered its PCR decision. The record does not indicate whether petitioner had completed his therapy requirement. Nothing in the updated record, however, shows that petitioner's license has been reinstated.[5] Therefore, the classification of the 2005 DUI conviction as a second conviction is still having a significant impact on petitioner.

¶ 34. Without citation to any relevant authority, the majority concludes that the expanded and ongoing suspension of petition-

---

[5] This information comes from the docket entries maintained by the Chittenden District Court as of November 15, 2008.

er's license is an insufficient collateral consequence to preclude his petition from being dismissed as moot because the suspension would not be reduced even if petitioner prevailed in the PCR proceeding. Put another way, the majority is holding that the second conviction is still a sound conviction even if the first conviction cannot be used for enhancement purposes. According to the majority, this proposition follows because the underlying conviction would not be disturbed even if petitioner prevailed in his PCR petition, and, in any event, a license suspension is merely a civil penalty and not a sentence.

¶ 35. Neither reason withstands scrutiny. As stated above, a conviction based on an invalid plea that is successfully attacked through a PCR petition aimed at reducing a later enhanced sentence does not nonetheless remain valid. Cf. *Vernlund v. State*, 589 N.W.2d 307, 311 (Minn. Ct. App. 1999) (holding that where defendant successfully challenged enhanced DUI conviction based on his claim that no factual basis was established for predicate DUI conviction, that conviction "must be vacated" and "cannot be used for enhancement"). Nor can an invalidated conviction support an ongoing license suspension stemming from that conviction. Cf. *McGhee v. State*, 951 P.2d 1215, 1217, 1219 (Alaska 1998) (concluding that enhanced three-year revocation of license would not be reduced where predicate DUI conviction was vacated shortly before defendant was reconvicted for same predicate offense, but indicating that license revocation would have to have been reduced had predicate conviction been dismissed).

¶ 36. There is absolutely no legal basis or compelling rationale for the majority's position that one could successfully challenge an enhanced sentence through a PCR petition claiming that a predicate conviction was invalid, and yet any and all consequences of the invalid conviction except for the immediate enhanced sentence — including an enhanced license suspension — would remain in effect. Certainly, if the successful collateral challenge to the predicate offense can negate the enhanced sentence, it can also negate the enhanced license suspension, which is often the most severe consequence imposed in DUI proceedings. See *id.* at 1219 (indicating that it would be manifestly unjust not to reduce license revocation upon dismissal of predicate offense that led to enhanced license revocation).

¶ 37. As indicated in the United States Supreme Court cases cited above, adverse collateral consequences of a civil nature, such

as possible deportation or loss of license, may be sufficient to prevent the dismissal of a case as moot. Relevant case law unequivocally demonstrates that the ongoing suspension of a driver's license is an adverse collateral consequence precluding application of the mootness doctrine. See *Marston v. R.M. Oliver*, 324 F. Supp. 691, 692 (E.D. Va. 1971) (stating that case is not moot because although petitioner is no longer being detained, "his conviction has given rise to the very real civil disability of ten years' withdrawal of his driving permit"), *reversed on other grounds*, 485 F.2d 705 (4th Cir. 1973); *Elzie v. Comm'r of Pub. Safety*, 298 N.W.2d 29, 32 n.7 (Minn. 1980) (stating that appellant's case was not moot because "he ha[d] not received back his cancelled license"). Indeed, courts universally agree that the continued loss of a license is a collateral consequence precluding a finding of mootness; the only question that generally arises is whether, even after the license suspension is terminated, there are other adverse collateral consequences precluding a finding of mootness. See, e.g., *Toler*, 817 A.2d at 232-33 (stating that case is not moot, despite restoration of driving privileges, where licensee faced potential increased penalties upon any future suspension of his license); *Elzie*, 298 N.W.2d at 32 (stating that case is not moot notwithstanding termination of license suspensions). In this case, the ongoing suspension of petitioner's license precluded a finding of mootness by the trial court; therefore, we should not affirm the court's judgment on that ground.

¶ 38. Yet another collateral consequence is that petitioner was required to pay a fine of $400 as a part of the consequences of his 2005 criminal conviction.[6] Since he did not appeal that conviction, he owed the fine immediately after sentencing and faced imprisonment if he did not pay it. See 13 V.S.A. § 7222. Thus, this is not a case where voluntary payment of the fine moots a challenge to its imposition or to the amount of fine imposed. See *State v. Cahill*, 127 Vt. 435, 436, 251 A.2d 497, 497 (1969); see also *Commonwealth v. Viglione*, 2004 PA Super 22, ¶ 20, 842 A.2d 454 (stating that involuntary payment of fine does not moot challenge).

---

[6] Petitioner paid the fine on May 18, 2006, the day of his release from probation, apparently because it was a condition of release and because nonpayment would have prevented his release. The law authorizes surcharges on fines, and the records of the Chittenden District Court indicate that petitioner has not paid all of the surcharges.

¶ 39. Our DUI sentencing scheme authorizes increasingly severe punishments for additional convictions of DUI. See 23 V.S.A. § 1210. Thus, the maximum fine for a second DUI conviction is higher than that for a first conviction. *Id.* § 1210(b), (c). We would expect that the typical fine imposed for a second DUI conviction would be higher than that imposed for a first DUI conviction. For this reason, if petitioner successfully challenged the validity of the 1992 conviction, so as to preclude its enhancing effect, he would be entitled to a reconsideration of his 2005 fine. See *Nakell v. Attorney General*, 15 F.3d 319, 322 (4th Cir. 1994) (stating that possible refusal to refund fine is adverse collateral consequence preventing mootness).

¶ 40. The majority attempts to avert this collateral consequence by holding that petitioner failed to raise it before the trial court. This lack-of-preservation rationale is unavailing here, however, because the State did not argue mootness and the trial court acted sua sponte in dismissing the case on summary judgment based on mootness. In short, petitioner had no opportunity to raise the issue that the majority faults him for not raising. Moreover, the record does not indicate whether the $400 fine was a voluntary part of a plea bargain, and, because mootness was not at issue at the time, there was no reason for petitioner to demonstrate that the matter was not moot.

¶ 41. For the above reasons, I do not believe either that this case was moot when the superior court ruled it was or that it is moot now. The majority responds in part that mootness is of petitioner's own making because he never sought to expedite the PCR petition to avoid that consequence. In fact, as the majority acknowledges, petitioner acted in a timely fashion in filing the PCR, but his appointed counsel failed to seek expedited relief and we have no assurance such speedy action would have occurred. He should not be penalized by the inaction of others. More importantly, the controversy must remain live through its entire time in the courts. See *LaFrance v. Envtl. Bd.*, 167 Vt. 597, 598, 706 A.2d 957, 958 (1998) (mem.) (stating that mootness doctrine requires actual controversy "at all stages of review"). Thus, if there had been speedier action, and petitioner had prevailed in the PCR, the State could nullify the victory by appealing the judgment to this Court so the clock would run out before a final result.

¶ 42. This latter hurdle returns me to the second, but most important point of this dissent. The promise of *Boskind* was that

we, not others, would craft a remedy if the PCR remedy proved inadequate. If the answer is that superior courts, and then this Court, must drop everything else to keep PCR cases alive, then we have to say so, loud and clear so that will happen. No ruling that depends on the trial courts and overworked public defenders to prioritize such matters will produce that result. In fact, the public defender and superior court would have had to act immediately, with no delay, to give petitioner a chance at a realistic remedy in this case. To deny petitioner a remedy because *he* did not produce this emergency action is blaming the victim. Then to take no action to ensure this result does not recur is violating the *Boskind* commitment.

¶ 43. The majority's answer to the *Boskind* commitment is that petitioner had other avenues to challenge the predicate conviction and that one case does not demonstrate that corrective action is necessary. The former response is beside the point. Any other available remedy had long since expired when the predicate conviction was used for enhancement. This, of course, was exactly the situation present in *Boskind*, where we made the commitment we are now dishonoring. If we thought that long-expired remedies eliminated the need for corrective action, we never would have made the commitment in the first instance.

¶ 44. I have an equally strong reaction to the majority's second response. This is the first appeal of an attempt to use PCR to eliminate a predicate conviction since *Boskind*, and it never went beyond the pleading stage. There is no hint of unusual delay in the record. Nor is there any indication in the record of a "fortuitous discharge from an indeterminate probation," *ante*, ¶ 18, as the majority suggests; rather petitioner was discharged from probation upon satisfactory completion of his sentence, as any other petitioner would be. We do not need a study of the incidence of predicate conviction challenges to see from this record that there is a problem and that the *Boskind* promise of an effective remedy is an illusion. If we do not take action on this record, we will never take action.

¶ 45. The most effective action to the clear problem is to overrule *Boskind* because it is based on the fiction that a PCR proceeding is a meaningful alternative to a challenge to the predicate conviction in an enhanced sentence proceeding. That fiction is a dangerous one that recognizes a right without a remedy. Although overruling *Boskind* would not apply to this

petitioner, it would give relief to future defendants and demonstrate that we fulfill our promises.

¶ 46. Our Constitution provides a right to a remedy "for all injuries or wrongs which one may receive in person." Vt. Const. ch. I, art. 4. We have rarely found a violation of this Article because what it protects is so basic — recourse to the judicial process rather than any substantive right. See *Gallipo v. City of Rutland*, 2005 VT 83, ¶¶ 50-51, 178 Vt. 244, 882 A.2d 1177. This is that unusual, and highly regrettable, case in which a petitioner has a substantive right but is deprived of any viable remedy. For the reasons stated above, I would reverse the trial court's decision and allow petitioner's PCR petition to go forward, but I would fix the system that allowed us to get into this controversy in the first instance.

¶ 47. I am authorized to state that Justice Johnson joins in this dissenting opinion.