NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 47

No. 2019-249

| | |
|---|---|
| In re Hopkins Certificate of Compliance (Bernard J. Boudreau, Appellant) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | December Term, 2019 |

Thomas S. Durkin, J.

Bernard J. Boudreau, Pro Se, Bennington, Appellant.

Cristina L. Mansfield, Manchester, for Appellee.

PRESENT:  Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.     **EATON, J.**  Bernard Boudreau appeals the environmental division's dismissal of his appeal from a decision of the Manchester Development Review Board (MDRB) for lack of jurisdiction.  We conclude that Boudreau's appeal is a collateral attack on a zoning decision barred by the exclusivity-of-remedy provision in 24 V.S.A. § 4472 and affirm.

¶ 2.     The record reveals the following relevant facts.  In 2017, Boudreau and Edward Hopkins owned abutting residential properties in the town of Manchester.  In April of that year, Hopkins sought a change-of-use permit allowing him to begin using his property as a law office.  Boudreau participated in the permit-review process.  Although there were several exterior improvements required under the site plan, Boudreau was primarily concerned with a line of

evergreen plantings which Hopkins had proposed to screen a parking area from his neighbors' view.  The MDRB approved the site plan—making specific note of the line of evergreen plantings and Hopkins' agreement to Boudreau's request that these plantings "consist of arborvitae"[1]—and issued a change-of-use permit.  Neither the site plan approval nor the permit were appealed.

¶ 3.     On January 30, 2018, the Zoning Administrator (ZA) granted Hopkins a temporary certificate of compliance stating that "[t]he project conforms to the permit and the building may be occupied for professional use until the exterior elements of the project are complete as approved" in the site plan.  Under the temporary certificate, Hopkins was required to obtain a final certificate of compliance prior to the temporary certificate's expiration on July 31, 2018.  But on August 3, 2018, after the temporary certificate had expired, the ZA issued Hopkins a second temporary certificate of compliance with an expiration date of July 31, 2019.  Boudreau timely appealed the second temporary certificate to the MDRB.

¶ 4.     On September 20, 2018, the MDRB issued a decision holding that the second temporary certificate functioned as an impermissible extension of the first temporary certificate, and finding that, in any event, the requirements for a temporary certificate had not been met.  It therefore ordered that Hopkins "either come into full compliance with the permit and approved site plan" within thirty days, "taking into consideration the following determinations, or cease use and occupancy of the Property until a Certificate of Occupancy has issued."  The "following determinations" included that the arborvitae screen was in compliance, but several other exterior improvements required under the site plan remained outstanding.

¶ 5.     Boudreau filed a notice of appeal from this decision in the environmental division on October 15, 2018.  Nine days later, while Boudreau's appeal was pending, the ZA issued

---

[1]  Arborvitae are "any of various evergreen trees and shrubs . . . of the cypress family that usually have closely overlapping or compressed scale leaves and are often grown for ornament and in hedges."  Arborvitae, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/MHP3-WCGW].

2

Hopkins a final certificate of compliance. Boudreau did not appeal the final certificate of compliance. Instead, he filed a statement of questions in connection with his appeal of the second temporary certificate, centering around the MDRB's determination that the arborvitae screen complied with the site plan. The statement of questions also asked the court to determine whether the final certificate was "void due to the noncompliance of the existing arborvitaes."

¶ 6. Hopkins and Boudreau filed cross-motions for summary judgment in the environmental division. However, the court determined that Boudreau's challenge to the validity of the final certificate was beyond the scope of his appeal from the temporary certificate. Because unappealed zoning decisions are impervious to collateral attack, the court reasoned, it was unable to grant relief, and the issues were moot. As a result, it dismissed the action for lack of jurisdiction. This appeal followed.

¶ 7. We review a court's dismissal for lack of jurisdiction de novo. Jordan v. State Agency of Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 8. The arborvitae-screening requirements were imposed pursuant to the Vermont Planning and Development Act. See 24 V.S.A. § 4416(a). Thereunder,

> the exclusive remedy of an interested person with respect to any decision or act taken, or any failure to act, under this chapter or with respect to any one or more of the provisions of any plan or bylaw shall be the appeal to the appropriate panel under section 4465 of this title, and the appeal to the Environmental Division from an adverse decision upon such appeal under section 4471 of this title.

24 V.S.A. § 4472(a) (enumerating two exceptions not relevant here). Further,

> [u]pon the failure of any interested person to appeal to an appropriate municipal panel under section 4465 of this title, or to appeal to the Environmental Division under section 4471 of this title, all interested persons affected shall be bound by that decision or act of that officer, the provisions, or the decisions of the panel, as the case may be, and shall not thereafter contest, either directly or indirectly, the decision or act, provision, or decision of the panel in any proceeding.

3

Id. § 4472(d). We have explained that § 4472(a) and (d) are "two sides of the same coin," embodying through "broad and unmistakable language" a legislative intent "to prevent any kind of collateral attack on a zoning decision that has not been properly appealed through the mechanisms provided by the municipal planning and development statutes." City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588-89, 762 A.2d 1229, 1230-31 (2000) (mem.). Together, they implement a weighty policy of repose grounded in the premise that, with respect to municipal zoning, " 'there should, in fairness, come a time when the decisions of an administrative officer become final so that a person may proceed with assurance instead of peril.' " Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142, 564 A.2d 1361, 1363 (1989) (quoting Graves v. Town of Waitsfield, 130 Vt. 292, 295, 292 A.2d 247, 249 (1972)).

¶ 9.     In order to "properly appeal[]" the decision of a ZA as required under this exclusivity-of-remedy provision, see City of S. Burlington, 171 Vt. at 588-89, 762 A.2d at 1230, an "interested person" must file a notice of appeal "within 15 days of the date of that decision." 24 V.S.A. § 4465(a). Although Boudreau acknowledges that he did not appeal from the final certificate, he argues that his appeal nonetheless evades the exclusivity-of-remedy provision because it is not a collateral attack on the final certificate, but instead a direct challenge to the MDRB's determination that Hopkins' arborvitae screening complied. In support of this argument, he contends that: (1) statutes relating to appeal rights are remedial in nature and must be liberally construed; (2) the issues raised on appeal do not constitute a collateral challenge barred by § 4472; (3) he exhausted his administrative remedies, because any appeal of the issue to the MDRB would have been duplicative as they already passed on the issue; (4) his statement of questions "preserved" the issue of the validity of the final certificate; and (5) his appeal is not moot.

¶ 10.     First, we reject the suggestion that we should view § 4472 through the lens of liberal construction. Boudreau argues that because it is a statute governing appeal rights, § 4472 is remedial in nature, and must be liberally construed in favor of the exercise of those rights. But we

4

employ tools of statutory construction "only if the plain language of the statute is unclear or ambiguous." Flint v. Dep't of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080. Boudreau points to no ambiguity within § 4472, nor do we find any. To the contrary, as explained supra, ¶ 8, we have repeatedly recognized that § 4472, through "broad and unmistakable language," forecloses any collateral attack on an unappealed zoning decision. City of S. Burlington, 171 Vt. at 588-89, 762 A.2d at 1230-31. As a result, we have enforced § 4472(a) and (d) to prevent collateral attack on unappealed zoning decisions "strictly" and "uniformly in cases stretching back several decades," even under circumstances where the unappealed ruling is alleged to be ultra vires and thus void ab initio. Id. at 588-90, 762 A.3d 1229-31 (tracing "clear line of our precedent on this point"); In re Tekram Partners, 2005 VT 92, ¶ 8, 178 Vt. 628, 883 A.2d 1160 (mem.); see also Town of Sandgate v. Colehamer, 156 Vt. 77, 84, 589 A.2d 1205, 1209 (1990) ("We have strictly enforced the exclusivity-of-remedy provision consistent with the evident legislative intent to require all zoning contests to go through the administrative review process in a timely fashion."). As "the intent of the Legislature is apparent on the face of the statute because [its] plain language . . . is clear and unambiguous," we are bound to "implement the statute according to that plain language."[2] Flint, 2017 VT 89, ¶ 5. There is no cause to engage in statutory construction here.

¶ 11. Boudreau is correct in arguing that § 4472(a) allowed him to appeal "any decision or act taken" under the Planning and Development Act, including the issuance of the second temporary certificate. However, the fact that Boudreau was permitted to appeal the ZA's decision to grant the temporary certificate does not render his appeal a direct challenge to the final certificate allowing him to escape § 4472's exclusivity-of-remedy provision. The issues appropriately raised

---

[2] Moreover, even where principles of liberal construction are in play, legislative intent remains our polestar. See In re Milton Arrowhead Mountain, 169 Vt. 531, 531, 726 A.2d 54, 56 (1999) (mem.) ("While we recognize the general rule that statutes regulating appeal rights are remedial in nature and must be liberally construed in favor of persons exercising those rights, our ultimate goal is to give effect to the intent of the Legislature.").

in connection with an appeal from the second temporary certificate are limited by the scope of that temporary ruling, which was effectively extinguished by the issuance of a final certificate. But the challenges Boudreau raises on appeal do not allege injury arising from the second temporary certificate, they allege injury resulting from the granting of the final certificate of compliance: his "ongoing" "view of an unsightly parking lot." Boudreau's parking-lot view is a result of the final certificate, not the second temporary certificate.

¶ 12. Boudreau's appeal from the second temporary certificate, then, is appropriately characterized as a collateral attack on the final order. See Collateral Attack, Black's Law Dictionary (11th ed. 2019) ("An attack on a judgment in a proceeding other than a direct appeal; esp[ecially] an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding . . . is that the judgment is ineffective."). Indeed, it is difficult to see how it could be perceived otherwise when the statement of questions asks whether the final certificate is void. See, e.g., Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142-43, 564 A.2d 1361, 1363-64 (1989) (holding exclusivity-of-remedy provision in § 4472 barred collateral attack even where underlying decision was void ab initio).

¶ 13. We find no merit in Boudreau's contention that because the MDRB indicated the arborvitae screening was compliant in its decision on the second temporary certificate, he had exhausted his administrative remedies relative to that issue. In support of this argument, he points to In re Fairchild, in which we held that, although those challenging the decision of a zoning board "must exhaust their administrative remedies, they do not have to do so twice." 159 Vt. 125, 132, 616 A.2d 228, 232 (1992). His reliance is misplaced. We distinguished Fairchild from other exclusivity-of-remedy cases under § 4472, because Fairchild involved parties who "did avail themselves of § 4472 remedies only to find that the [t]own refused to enforce their court order." Id. No such circumstance is alleged here.

6

¶ 14.    Nor do we have the authority to exempt Boudreau from the requirements of § 4472 because, as he argues, raising the issue with the MDRB again would have been an exercise in futility. Where "the Legislature specifically mandates, exhaustion is required." Stone v. Errecart, 165 Vt. 1, 4, 675 A.2d 1322, 1325 (1996). It is only "[w]here the Legislature has 'not clearly required exhaustion' " that " 'sound judicial discretion governs,' " and "[t]he futility doctrine has been adopted as part of that discretion to dispense with unnecessary exhaustion of administrative remedies." Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superseded by statute on other grounds, 42 U.S.C. § 1997e, as recognized in Woodford v. Viet Mike Ngo, 548 U.S. 81, 84-85 (2006)). "It has no place . . . in the face of a clear legislative command that exhaustion is required." Id. Through § 4472, the Legislature clearly expressed its intent that parties exhaust administrative remedies before zoning boards. We are therefore bound to effectuate that intent without regard to Boudreau's futility argument.

¶ 15.    However, in the alternative, Boudreau contends that his statement of questions preserved the issue of the final certificate's validity such that his appeal of the temporary certificate demonstrated his intent to appeal the final order. We first note that his reliance on the principle that a statement of questions "functions like a pleading to limit the issues that are to be heard on the appeal," see V.R.E.C.P. 5(f), is based on a false syllogism: the fact that a statement of questions limits the issues to be heard on appeal does not mean that issues beyond the scope of an appeal are drawn within a court's jurisdiction through their inclusion in a statement of questions. Nor are we persuaded by Boudreau's citation to In re Hignite, a case in which we construed a notice of appeal which "referred somewhat ambiguously to the Board's decision 'with regard to the application' " as an appeal of two separate rulings "in light of the statement of questions filed shortly thereafter." 2003 VT 111, ¶ 9, 176 Vt. 562, 844 A.2d 735 (mem.). Boudreau's notice of appeal clearly stated that he was appealing the MDRB decision "dated September 20, 2018." It would be illogical to

construe this as a notice of appeal from a decision which had yet to be rendered at the time the notice was filed.[3]

¶ 16.    We thus conclude that Boudreau's appeal was limited to only those issues appropriately raised in connection with the second temporary certificate of compliance. And because the temporary certificate was effectively extinguished by the issuance of the final certificate, the environmental court correctly determined that all of these issues were moot. "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.) (quotation omitted). "Thus, a change in facts or circumstance can render a case moot if this Court can no longer grant effective relief." Id. (quotation omitted). Boudreau asserts no legally cognizable interest in the compliance status of the arborvitae screen in the period between the ZA's issuance of the second temporary certificate of compliance and the ZA's

---

[3]    We note that subsections (a)(3) and (4) of Vermont Rule of Appellate Procedure 4, governing premature appeals, have no application here. Under Rule 4(a)(3), "[a] notice of appeal filed after the superior court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date the decision, sentence, or order is entered." V.R.A.P. 4(a)(3). However, appeals from a zoning board to the environmental division are governed by Vermont Rule for Environmental Court Proceedings 5. V.R.E.C.P. 5(a)(1). Thereunder, the Vermont Rules of Appellate Procedure govern only "so far as applicable." V.R.E.C.P. 5(a)(2), (h)(1)(A). By its own language, V.R.A.P. 4(a)(3) is "applicable" to announcements of decision made by a "superior court," not a local zoning board of adjustment. And the Environmental Rules do not provide that references to the superior court in the Appellate Rules should be construed as references to some other tribunal. Compare V.R.F.P. 8(g)(3)(A) (providing that, subject to enumerated exceptions, the Rules of Appellate Procedure govern an appeal from a magistrate to the family court, and "[a]ll references in the [Appellate Rules] to the superior or district court shall be deemed references to the magistrate"), with V.R.E.C.P. 6(a)(1) ("The words 'court,' 'judge,' or similar terms, when used . . . in provisions of the Vermont Rules of . . . Appellate Procedure incorporated in these rules shall mean the Environmental Division . . . ."). Assuming arguendo that the language from the MDRB's decision on the second temporary certificate concerning the arborvitae screen's compliance constituted an announcement of decision, Rule 4(a)(3) does not apply because it was not an announcement of decision by a superior court. Rule 4(a)(4) provides that "[a] notice of appeal filed before the timely making or disposition of any of the motions set forth in Rule 4(b) is effective when the motion is decided unless the motion is withdrawn." It is inapposite here because none of the motions enumerated in Rule 4(b) were filed.

issuance of the final certificate. Accordingly, the environmental court could not provide him with relief, and correctly determined that it was barred from reviewing the issue.[4] Holton v. Dep't of Emp't & Training, 2005 VT 42, ¶ 14, 178 Vt. 147, 878 A.2d 1051 ("The mootness doctrine derives its force from the Vermont Constitution, which, like its federal counterpart, limits the authority of the courts to the determination of actual, live controversies between adverse litigants.").

¶ 17.    As we have repeatedly held, in the strongest terms, "[s]ection 4472 demonstrates an unmistakable intent to limit zoning disputes to a well-defined procedure and to provide finality at the end of proceedings." City of S. Burlington, 171 Vt. at 590, 762 A.2d at 1231; see also In re Collette, 2008 VT 136, ¶ 7, 185 Vt. 210, 969 A.2d 101 ("The finality of undisputed judgments is no stranger to our law, which is replete with deadlines, and indeed is expressly favored despite belatedly perceived flaws."). Thus, "[f]ailure to file a timely appeal from a decision of the [zoning board] deprives the environmental court of jurisdiction to consider that decision." In re Ashline, 2003 VT 30, ¶ 8, 175 Vt. 203, 824 A.2d 579. None of Boudreau's arguments are sufficient to circumvent the exclusivity-of-remedy provision. "[A]lthough pro se litigants receive some leeway from the courts, they are still 'bound by the ordinary rules of civil procedure.' " Zorn v. Smith, 2011 VT 10, ¶ 22, 189 Vt. 219, 19 A.3d 112 (quoting Vahlteich v. Knott, 139 Vt. 588, 591, 433 A.2d 287, 288 (1981)). Nor can a pro se party evade the statutory procedure clearly set forth here.

---

[4]  Boudreau contends that, even if the case is moot, it fits within the adverse-collateral-consequences exception to the mootness doctrine because he "continues to have the negative experience of a view of [Hopkins'] five[-]vehicle parking lot and the vehicles parked there due to the inadequate arborvitae screening that was to shield his view of same." However, this exception is appropriately applied only "when negative collateral consequences are likely to result from the action being reviewed." In re P.S., 167 Vt. 63, 67, 702 A.2d 98, 101 (1997) (emphasis added). As a result, Boudreau's collateral-consequences argument suffers from the same deficiency as his others: it is not directed at the action being reviewed, i.e., the issuance of the second temporary certificate. The exception does not apply because Boudreau does not allege negative collateral consequences likely to result from the temporary decision he appealed. Paige v. State, 2013 VT 105, ¶ 13, 195 Vt. 302, 88 A.3d 1182 ("Absent a direct link between the challenged . . . orders and the purportedly negative collateral consequences suffered by plaintiff, the collateral consequence exception to mootness is inapplicable.").

We decline to depart from the longstanding principle that, in order to ensure repose and allow permit-seekers such as Hopkins to proceed with confidence, rather than peril, "§ 4472 unequivocally forecloses" any collateral attack—whether a fundamental challenge to the agency's authority to act or a question of the sufficiency of an arborvitae screen—instead requiring these arguments to be raised through "a timely, direct appeal." <u>Ashline</u>, 2003 VT 30, ¶ 8. Boudreau failed to file such an appeal from the final order, and the environmental court appropriately concluded that it was therefore without jurisdiction to consider his arguments.

 <u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice